## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KRISTIN LEONE, KIMBERLY MESZAROS, ANDREA CAJUSTE, CHRISTINE DUBORG, FELICIA SCAROLA, KIRK WILLIAM MACKEY, JANINE M. COLON, SCOTT SHELLENBARGER, BARBARA T. ROCKHOLT, DANIELLE A. LOGELFO, HIROSHI SEKIYA, JAY S. MOSES, JENNIFER L. AEBI, MICHAEL NUETZMANN, TIMOTHY MATTHEWS, WARREN TESTA, ROBERT BRISTEL, SHERRY NOBLE-CHYLA, PAUL FRANCESCHINI, DEBRA J. MURRAY, LINDA ALKINS-LALLAVE, CHARLES ZERBO, ROBERT D. MORSE, MARIA CALVIN, JEFFREY INTERMESOLI, GUSTAV MARTINEZ, III, SUSAN A. PLATE-GRANIERI, NADINE CLARK, ROBERT E. REED, CHRISTOPHER S. BARNES, ERIC GODDUHN, JOHN SAMUEL CHILCUTT, DEBRA LADENHEIM, RANDALL ORNER, MARCO MARINO, PETER MCGAHAN, NORMAN RICH, GARY PRICE and ELISE L. ARNONE, individually and on behalf of similarly situated Participants and Beneficiaries of the Olympus Corporation of the Americas Pension Plan, | Civil Action No.<br><br>**COMPLAINT – CLASS ACTION** |
| Plaintiffs, | |
| vs. | |
| OLYMPUS CORPORATION OF THE AMERICAS, the BENEFITS ADMINISTRATIVE COMMITTEE OF OLYMPUS, and JOHN DOES 1-10, | |
| Defendants. | |

1.      Plaintiffs Kristin Leone, Kimberly Meszaros, Andrea Cajuste, Christine Duborg,

Felicia Scarola, Kirk William Mackey, Janine M. Colon, Scott Shellenbarger, Barbara T. Rockholt,

Danielle A. Logelfo, Hiroshi Sekiya, Jay S. Moses, Jennifer L. Aebi, Michael Nuetzmann, Timothy Matthews, Warren Testa, Robert Bristel, Sherry Noble-Chyla, Paul Franceschini, Debra J. Murray, Linda Alkins-Lallave, Charles Zerbo, Robert D. Morse, Maria Calvin, Jeffrey Intermesoli, Gustav Martinez, III, Susan A. Plate-Granieri, Nadine Clark, Robert E. Reed, Christopher S. Barnes, Eric Godduhn, John Samuel Chilcutt, Debra Ladenheim, Randell Orner, Marco Marino, Peter McGahan, Norman Rich, Gary Price, and Elise L. Arnone (collectively, "Plaintiffs") individually and as representatives of a proposed class of participants and beneficiaries of the Olympus Corporation of the Americas Pension Plan ("Plan") bring this action under 29 U.S.C. §1132(a)(2) and (3) on behalf of the Plan against Defendants Olympus Corporation of the Americas ("Olympus"), the Benefits Administrative Committee of Olympus (the "Committee"), and John Does 1-10 (collectively, "Defendants"), for breach of fiduciary duties under the Employee Retirement Income Security Act, 29 U.S.C. §§1001–1461 ("ERISA").

2.     Olympus sponsors and maintains the Plan, a defined benefit pension plan, for the benefit of its employees, whose initial term of employment commenced prior to April 1, 2009, to provide them lifetime income at retirement. The Plan provides a normal retirement benefit equal to a percentage of each participant's final average compensation, payable for life.

3.     Under ordinary circumstances, retirees can receive their benefits from the Plan only in the form of an annuity providing for lifetime income. A participant is usually unable to receive his or her benefits in the form of a single lump sum distribution.

4.     On two occasions, however, Olympus amended the Plan to permit the group of former employees who had terminated employment with vested benefits in the plan but had not yet commenced receiving those benefits ("vested terminated participants"), to receive an immediate lump sum distribution of the total present value of their retirement benefit.

5.      Special opportunities like this are referred to as "windows" because they are available only if the participant elects to participate in during a narrowly defined period of time.

6.      The first time Olympus offered a lump sum window to its vested terminated participants was in 2017. This lump sum offer was made shortly after the company settled a federal whistleblower lawsuit for $646 million for violating the U.S. Anti-Kickback Statute, which, at the time, was the largest amount ever paid by a medical device company to settle such whistleblower charges.[1] The settlement resolved allegations that Olympus paid kickbacks to doctors and hospitals in exchange for their purchase of Olympus endoscopes and other medical and surgical devices.[2] As described below, offering lump sum distributions to vested terminated participants in 2017 provided Olympus the opportunity to save tens of millions of dollars in funding obligations to the Plan.

7.      After the 2017 window had closed, Olympus' corporate parent had a costly brush with the law related to its U.S. operations. Specifically, in 2018, Olympus' parent company paid fines of $80,000,000 and $5,000,000 in criminal forfeitures, pursuant to a plea agreement with the U.S. Department of Justice for failing to file required adverse event reports involving infections connected to duodenoscopes, and to continuing to sell the duodenoscopes in the United States despite those failures, in violation of the Federal Food, Drug, and Cosmetic Act.[3]

8.      The second lump sum window, which is the subject of this litigation, occurred in

---

[1] *See* Department of Justice press release of March 1, 2016, available at:
https://www.justice.gov/opa/pr/medical-equipment-company-will-pay-646-million-making-illegal-payments-doctors-and-hospitals
[2] *Id*.
[3] *See* Department of Justice press release, December 10, 2018, available at
https://www.justice.gov/opa/pr/olympus-medical-systems-corporation-former-senior-executive-plead-guilty-distributing.

2020. Plaintiffs were among the group of vested terminated participants eligible to participate in the 2020 lump sum window. As with all such windows, the special opportunity would be available only if the participant elected to receive the lump sum distribution in time for the distribution to be made *prior* to March 31, 2020[4].

9.      Olympus offered this lump sum window in order to reduce its pension funding obligations—if Olympus were able to cash out the benefits of vested terminated participants prior to April 1, 2020, it would save millions of dollars in pension funding expenses due to the actuarial assumptions and methods used to calculate the lump sum value of each participant's pension benefit.

10.     Ordinarily, the amount of the lump sum of a defined benefit pension is calculated as (i) the value at a participant's normal retirement age, usually at age 65, of a stream of future payments commencing at the participant's normal retirement date, which is then (ii) discounted to present value. Accordingly, the lump sum calculation depends on several factors, including: the amount of each monthly payment, the beginning date for the stream of payments, the participant's current age, the expected future rate of return on invested assets (*i.e.*, the discount rate), and the participant's life expectancy. In other words, it is the calculation of the amount needed today which, if that amount earns an investment return at some assumed rate for the period prior to and after commencement of payments, will be sufficient to pay the participant his or her defined monthly benefit commencing at age 65 and to continue such payments for his or her life expectancy.

11.     There are two variables in that formula that change depending on when the

---

[4] Some vested terminated participants who were not yet eligible to commence retirement benefits elected to commence their benefit immediately in the form of an annuity.  Participants who elected the annuity are not part of this litigation.

calculation is being made: the assumed rate of return on investment and the participant's life expectancy.

12.     Clearly, if expected earnings are high, less is needed today to fund that future benefit. Conversely, if the anticipated rate of return on investment is comparatively low, a greater amount of money is needed today to fund future benefits.

13.     The Plan specifies how to determine the assumed rate of return by referencing interest rates published by the Internal Revenue Service. Specifically, the Plan specifies that the rates to be used are those in effect for the November preceding the current Plan year, which runs from April 1 to March 31. Those rates are published periodically by the Internal Revenue Service and available at https://www.irs.gov/retirement-plans/minimum-present-value-segment-rates, last viewed June 26, 2020.

14.     As Defendants are aware, interest rates have been falling since November 2018, which is the reference month for lump sum calculations of distributions occurring during the 2019-2020 Plan year.[5] Indeed, between November 2018 and November 2019, applicable rates for calculating lump sum values of accrued benefits had fallen roughly one full percent.[6] In fact, in December 2019, when the IRS published the rates applicable for November 2019, Olympus knew exactly what the change in interest rates would mean for purposes of its obligation for funding the Plan and to what extent additional contributions would be required.

15.     In the months following the publication of the November 2019 rates, Olympus, with the assistance of its actuaries and consultants, including Milliman, Inc., calculated the lump sum present value of the accrued benefits of all participants who had terminated employment with

---

[5] *Id.* at 2.
[6] *Id.* at 1, 2.

Olympus but not yet commenced receipt of retirement benefits from the Plan (referred to as "Deferred Vested Participants"), and assuming that the lump sum distribution would be made prior to April 1, 2020. Olympus then calculated lump sum present value for Deferred Vested Participants assuming such distributions would be made on or after April 1, 2020, the first day of the new Plan Year and the date that new interest rates would apply for purposes of the calculation.

16.     The difference was dramatic. For example, the present value of Plaintiff Leone's benefit distributable after March 31, 2020 was thirty-two percent (32%) higher than the benefit distributable before April 1, 2020. The benefit of Plaintiff Duborg's benefit distributable after March 31, 2020 was forty-two percent (42%) higher than the benefit distributable before April 1, 2020. Jeffrey Intermesoli's benefit distributable after March 31, 2020 was thirty-four percent (34%) higher than the benefit distributable before April 1, 2020 if it were not distributable until after March 31, 2020. The chart below delineates the significance that date of distribution plays in determining the lump sum present value.

| Percentage Increase between Post April 1, 2020 Lump Sum Value and Pre April 1, 2020 Lump Sum Value | |
| --- | --- |
| Post April 1, 2020 Lump Sum Value Percentage Increase | Participants' Last Name |
| 46.26% ** | Duborg |
| 45.8200% | Logelfo |
| 43.2100% | Colon |
| 41.2900% | Martinez |
| 39.0863% | Clark |
| 37.3800% | Shellenbarger |
| 34.9800% | Nuetzmann |

| | |
|---|---|
| **34.8700%** | **Intermesoli** |
| **31.0000%** | **Leone** |
| **30.1500%** | **Cajuste** |

**\*\*% change formula. Adjusted Amount as V1. Original Amount as V2.**
**E.g., if V2 (post April 1, 2020 benefit) is $138000 and V1 (March 31, 2020 benefit is $95000) the percentage change is 45.263% increase post April 1, 2020.**
**Solution: ((V2-V1)/V1)\*100=percentage change; ((138000 - 95000) / 95000) \* 100 = 45.26 %**

17.    The changes in the interest rates affected not only the calculation of the lump sum present value of the benefit, it would also materially increase Olympus' funding obligations to the Plan. Since the present value of pension benefits would increase significantly with the change in interest rates, so would the amount required to be contributed to the Plan. If Olympus could terminate Deferred Vested Participants from the Plan prior to April 1, 2020 by cashing them out in a lump sum distribution, it would save millions of dollars in required contributions to the Plan.

18.    When a pension plan does not ordinarily offer a lump sum distribution, the opportunity to receive the entire value of the pension benefit and a single lump sum distribution in cash can be very tempting. Leveraging that temptation, Olympus amended the Plan to allow lump sum distributions for a limited window and, on January 2, 2020, sent written offer letters (the "Lump Sum Offer Letters") to Deferred Vested Participants allowing them to elect to receive a lump sum distribution provided that the election was made prior to February 17, 2020.

19.    But someone made a big mistake. The Lump Sum Offer Letters uniformly reported the value of a lump sum that would have been distributable after April 1, 2020, rather than the significantly smaller lump sum value for benefits distributable prior to April 1, 2020.

20.    Hundreds of Deferred Vested Participants accepted the lump sum offer and received payment of the amounts specified in the Lump Sum Offer Letter. The error by Olympus was ultimately realized and Milliman, a pension consultant hired by Olympus to assist in the

administration of the lump sum window (and the likely perpetrator of the error), sent a Notice of Benefit Overpayment dated between April 17, 2020 and April 28, 2020 the "Notice") to each Deferred Vested Participant who had elected to receive the lump sum distribution.

21.     The Notice informed Participants that they had received an overpayment from the Plan because their distribution was based on an incorrect interest rate and it described the amount of the difference in value.

22.     The Notice purported to give participants the choice either to: (i) revoke their previous election to receive a lump sum distribution and retain the right to receive their benefit in the form of an annuity beginning at normal or early retirement age; or (ii) confirm the election of a lump sum distribution by either returning the form included for that purpose or by doing nothing at all. In other words, the default election was to receive a lump sum distribution.

23.     The Notice further informed participants that Olympus, through Milliman, would pursue self-help remedies in order to recoup the alleged overpayments, including issuing stop payment orders with respect to distribution checks that had not been negotiated, and seeking to recover distributions from the financial institutions into which Participants had rolled over their lump sum distributions in a tax-free rollover or directly from participants.

24.     In some cases, participants have voluntarily returned the alleged overpayments.

25.     In other cases, Olympus' self-help was effective and stop-payment orders prevented negotiation of the distribution check, or trustees of rollover accounts voluntarily returned the amount of the rollover to the Plan.

26.     On the other hand, some participants successfully negotiated distribution checks before receiving a Notice of Overpayment and then used the funds to acquire other property, including illiquid assets, and are not in a position to return the alleged overpayment.

27.     In cases where self-help worked or where participants voluntarily returned the alleged excess distribution, the Plan has already re-distributed what Olympus claims is the correct amount of the lump sum distribution.

28.     But Olympus and Milliman have a new problem. The distributions made pursuant to the lump sum window program as a result of the defective (and void) lump sum distribution elections were <u>not</u> distributable prior to March 31, 2020, *i.e.*, made within the 2019 Plan year. Since Olympus has extended the window beyond the April 1, 2020 start of the new Plan year, the Plan document itself requires that lump sum distributions be calculated using the interest rates effective November 2019 and which were originally used by Olympus to communicate the lump sum window. Specifically, the Plan document, as amended, provides:

> Effective March 1, 2017, the "Applicable Interest Rate" means the adjusted first, second and third segment rates applied under rules similar to the rules of Code Section 430(h)(2)(C) for the fifth calendar month preceding the first day of the Plan Year during which the Annuity Starting Date occurs, pursuant to the provisions of Code Section 417(e)(3) (including the phase-in percentages under subsection (D)(iii) thereunder).

29.     As a result, the election of all participants to receive a lump sum distribution in March 2020 has been voided as a result of Defendants' error and they are now electing to receive a lump sum distribution in the new April 2020 to March 2021 Plan Year, and are entitled to receive the amount calculated as of the date of the new election using the November 2019 interest rate, and not using the November 2018 interest rates in effect for the plan year ended March 31, 2020. This includes all participants who did nothing after receiving the Notice of Overpayment, as the default option was election of the lump sum distribution.

30.     ERISA's duties of loyalty and prudence are "the highest known to the law" and require fiduciaries to have "an eye single to the interests of the participants and beneficiaries." *Donovan v. Bierwirth*, 680 F.2d 263, 271, 272 n.8 (2d Cir. 1982). As fiduciaries to the Plan,

Defendants are obligated to act for the exclusive benefit of participants and beneficiaries. Defendants breached their fiduciary duties to the Plan by failing to abide by the terms of the Plan in administering the lump sum distribution offer, thereby causing the Plan to miscalculate lump sum distributions. Defendants further breached their fiduciary duties to Plaintiffs and the Class by wrongfully pursuing self-help remedies to recoup alleged overpayments that resulted in financial harm to such participants who had justifiably relied upon Defendants' calculations of their lump sum distributions and took actions—like investing amounts in illiquid assets like real estate—in the belief that the amounts they received would not be subject to adverse claims by the Plan.

31.    To remedy these fiduciary breaches, Plaintiffs, individually and as representatives of a class of participants and beneficiaries in the Plan, bring this action on behalf of the Plan under 29 U.S.C. §1132(a)(2) and (3) to enforce Defendants' liability under 29 U.S.C. §1109(a) to compensate Plaintiffs and the Class for the financial consequences of Defendants' carelessness and mismanagement of Plan assets, and to pay amounts owed to participants under the Plan documents. In addition, Plaintiffs seek such other equitable or remedial relief for Plaintiffs and the Class as the Court may deem appropriate.

32.    Examples of the financial consequences suffered by Plaintiffs include: Plaintiff Nadine Clark who elected to receive a lump sum distribution in cash with 35% withheld for taxes. Within seven days of receiving her distribution, Ms. Clark reduced her family's debt which reduced the strain of her husband's recent unemployment. Ms. Clark was shocked to learn that the lump sum distribution she was offered, and which formed the basis for her decision, was 39.08% higher than Milliman's newly calculated amount. Moreover, Milliman simply took back the difference between the amount agreed to and distributed, and Milliman's new "corrected" amount. Milliman's actions caused a significant change in her financial circumstances and Ms. Clark is

without the resources to repay the alleged overpayment, and because of her reliance on the misrepresentation of Olympus, without the capacity to revoke her consent.

33.     Gustav Martinez, III, who elected a cash out distribution and used the funds as a down deposit on a family home, is in a similar position. Mr. Martinez learned that the lump sum distribution he was offered, which formed the basis for his decision, was 41.9% higher than Milliman's newly calculated amount. Mr. Martinez is without resources to remit the alleged overpayment. And Debra Ladenheim, who elected to rollover a portion of her benefit with balance taken out in cash, used the cash distribution to relieve financial strain by reducing debt. When she learned that the amount of the lump sum distribution she was offered, which she relied upon in making her election, was 22.77% higher than Milliman's "corrected" calculation, her financial strain heightened as she is without the resources to repay the alleged overpayment. Likewise, Kristin Duborg, after careful research, elected to secure her retirement by electing a lump sum distribution rolled over to her financial institution. Ms. Duborg's financial security has been jeopardized since learning that the distribution she agreed to, and upon which she based her decision, was 46.26% higher than Milliman's newly calculated amount. Ms. Duborg lacks the financial resources to remit the alleged overpayment. Similarly, Kristin M. Leone elected to secure her retirement by electing to have the full distribution rolled over to her financial institution. Though the funds had not yet been received, Ms. Leone's financial institution credited her account for the full amount. Little did she know that her decision was based on a Milliman calculation error that inflated her pension value by 32%. Milliman's newly calculated amount has caused Ms. Leone to revisit her retirement strategy. And, Scott Shellenbarger likewise took the lump sum distribution and rolled it over to his financial institution. As it did to many of the Plaintiffs, Milliman sought to recover the alleged overpayment from his rollover trustee and substitute the agreed-to

- 11 -

distribution amount with the newly calculated amount. The agreed-to amount, that is the amount upon which Mr. Shellenbarger based his financial planning, was 37.38% higher than the newly calculated amount. Mr. Shellenbarger's funds are now in an illiquid investment. Defendants' self-help tactics have left Plaintiffs reeling, and has disrupted the plans they made for their own and their family's future.

## JURISDICTION AND VENUE

34.     This Court has exclusive jurisdiction over the subject matter of this action under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331 because it is an action under 29 U.S.C. §1132(a)(2) and (3).

35.     This Court has personal jurisdiction over Defendants because they are headquartered and transact business in this District, reside in this District, and/or have significant contacts with this District, and because ERISA provides for nationwide service of process.

36.     This District is the proper venue for this action under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(b) because it is the district in which the Plan is administered, where at least one of the alleged breaches took place and where the Defendants reside.

## STANDING

37.     Under ERISA, 29 U.S.C. § 1132(a)(2), any participant, fiduciary, or the Secretary of Labor may sue derivatively as a representative of a plan to seek relief on behalf of the plan. As explained herein, the Plan suffered harm resulting from Defendants' fiduciary breaches and remains exposed to harm and continuing losses, and those injuries may be redressed by a judgment of this Court in favor of Plaintiffs and the proposed Class. To the extent the Plaintiffs must also show an individual injury, each Plaintiff has suffered such an injury, as alleged herein.

38.     Plaintiffs and all Deferred Vested Participants suffered financial harm as a result of

Defendants' failures to administer the Plan in accordance with its terms which resulted in the incorrect and improper calculation of lump sum distributions, and resulted in actual economic harm to Plaintiffs and the Class who justifiably relied upon Defendants' lump sum distribution calculations in electing to receive such distributions and in their decisions to reinvest such sums.

## PARTIES

### The Olympus Corporation of the Americas Pension Plan

39.     The Plan is a defined benefit, employee pension benefit plan under 29 U.S.C. §1002(2)(A) and §1002(35).

40.     The Plan is established and maintained under a written document in accordance with 29 U.S.C. §1102(a)(1).

41.     In general, employees of Olympus first hired prior to April 1, 2009 are eligible to participate in the Plan. The Plan provides a significant source of retirement income for many former eligible employees of Olympus.

## PLAINTIFFS

### Stop Payment Group: The Following Plaintiffs Had A "STOP PAYMENT ON ROLLOVER MAILED TO PARTICIPANT" Issued to Themselves or Their Financial Institution

42.     Plaintiff Kristin Leone, a resident of Floral Park, New York, is a participant in the Plan under 29 U.S.C. § 1002(7) because she and her beneficiaries are or may become eligible to receive benefits under the Plan. In deciding whether to accept Olympus' offer to take a lump sum distribution and roll over the funds to another financial institution, Ms. Leone reasonably relied upon Milliman's benefits statement.[7] Ms. Leone reasonably assumed that the methodology supporting the Benefits Statement were tested for accuracy regularly. At Milliman's direction, Ms.

---

[7] All Plaintiffs herein were presented by Defendants with a lump sum certain as calculated by Defendants. Due to the potentially sensitive nature of the lump sum amounts as calculated, Plaintiffs are not presenting those lump sum certain amounts herein.

Leone reviewed and confirmed her hire start date and hire end date. Ms. Leone reviewed, completed, and submitted all required paperwork. Based on the information Milliman made available, Ms. Leone elected a lump sum distribution rolled over to her financial institution. Though the funds had not yet been received, Ms. Leone's financial institution credited her account for the full amount. Little did she know that her decision would be undermined by a Milliman calculation error that inflated her pension value by 32%, and that Defendants would unilaterally change the distribution amount that she was to receive. In its Notice of Overpayment letter, Milliman did not offer Ms. Leone a revised election package. Instead, Ms. Leone was told that a revised check would be sent to the financial institution unless she revoked her original election. Again, without notice to Ms. Leone, on or around June 9, 2020, Milliman sent a check to Ms. Leone's financial institution, which represented Defendants' new valuation of Ms. Leone's pension. Knowing that at any time Milliman may take back her earned pension benefits on the premise that it made a calculation error, Ms. Leone has not effectuated the rollover as she cannot rely on the Milliman's statement of present value. Milliman presented a pension valuation to Ms. Leone that induced her to elect a lump sum distribution that would go towards securing her financial future. Defendants' unilateral decision to take back a distributed pension and its subsequent redistribution of funds in a lesser amount effectively denied Ms. Leone and other similarly situated Plaintiffs the opportunity to dispute Defendants' overpayment claim. It is inequitable for Ms. Leone and other similarly situated Plaintiffs to bear the monetary responsibility of Defendants' mistake.

43.     Plaintiff Kimberly Meszaros, a resident of Kansas City, Montana, is a participant under the Plan under 29 U.S.C. § 1002(7) because she and her beneficiaries are or may become eligible to receive benefits under the Plan. In deciding whether to accept Olympus' one-time offer

to take a lump sum pension distribution and/or roll over the funds to another financial institution, Ms. Meszaros reasonably relied upon Milliman's Benefits Statement. At Milliman's direction Ms. Meszaros reviewed and confirmed all requested information including her spousal information, her hire start date and hire end date, and her job titles. Milliman's Benefits Statement represented that Ms. Meszaros was eligible to receive a lump sum distribution of a certain amount. Ms. Meszaros saw the lump sum distribution as an opportunity to purchase real estate. In reliance on Defendants' representations, Ms. Meszaros reviewed, completed, and submitted all paperwork in order to receive a lump sum distribtion. Ms. Meszaros received her lump sum distribution and deposited it into her checking account. Having a long positive relationship with the bank, Ms. Meszaros was able to immediately draw on the funds to close the real estate transaction. At the settlement table, Ms. Meszaros learned that Milliman had put a stop payment on the check, and that her account had a $13,000 negative balance. On or about April 20, 2020, Ms. Meszaros received Milliman's Notice of Overpayment letter claiming that it had overpaid her benefits by a substantial amount and demanded that Ms. Meszaros immediately return to the overpayment to the Plan. Meszaros lacks the financial ability to remit those funds to the Plan since the money was used to purchase real estate. Moreover, if at the time of the offer Ms. Meszaros had known that her distribution would be reduced by a substantial amount, she would not have elected to take  lump sum distribution and she would not have used the lump sum to purchase real estate. Ms. Meszaros relied on Defendants' representations in making her financial decision to accept a lump sum cash distribution to her detriment. It is inequitable for Ms. Meszaros and other similarly situated Class members to bear the financial responsibility of Defendants' mistake.

44.     Plaintiff Andrea Cajuste, a resident of Alpharetta, Georgia, is a participant in the Plan under 29 U.S.C. § 1002(7) because she and her beneficiaries are or may become eligible to

receive benefits under the Plan. In deciding whether to accept Olympus' offer to take a lump sum distribution and roll over the funds to another financial institution. Ms. Cajuste reasonably relied on Milliman's Benefits Statement. Ms. Cajuste reasonably assumed that the methodology supporting the Benefits Statement was tested for accuracy regularly. At Milliman's direction, Ms. Cajuste reviewed and confirmed her hire start date and hire end date, and completed and submitted all required paperwork. Based on the information Milliman made available, Ms. Cajuste elected to take a lump sum distribution, which she rolled over to her financial institution. On April 10, 2020, Ms. Cajuste's financial institution notified her that Milliman had placed a stop payment on her distribution check and her account had incurred a $25.00 returned check fee. Several days later, Milliman employed its automatic recoupment process and took back Ms. Cajuste's lump sum distribution, without her knowledge or consent. Afterwards, Ms. Cajuste received Milliman's April 17, 2020 Notice of Overpayment letter explaining Milliman's failure to use the correct interest rate when valuing her pension. She was shocked to learn that the lump sum distribution she was offered, and which formed the basis for her election decision, was 30.15% higher than the newly calculated amount. Moreover, Milliman took back the difference between the amount agreed to and distributed, and the purported correct amount. Defendants' actions caused a significant change in her financial circumstances. In its Notice of Overpayment letter, Milliman did not offer Ms. Cajuste a revised election package. Instead, Ms. Cajuste was told that a check reflecting the lesser amount would be sent to her financial institution without any further action on her part unless she affirmatively revoked her original election by signing and returning the revocation from within 30 days. Defendants presented a pension valuation to Ms. Cajuste that induced her to elect a lump sum distribution that would go towards securing her financial future. Defendants' unilateral decision to take back a distributed pension and subsequent redistribution of funds at a lesser

amount effectively denied Ms. Cajuste and other similarly situated Class members the opportunity to dispute Defendants' overpayment claim. It is inequitable for Ms. Cajuste and other similarly situated Class members to bear the financial responsibility of Defendants' mistake.

45.     Plaintiff Christine Duborg, a resident of Orefield, Pennsylvania, is a participant in the Plan under 29 U.S.C. § 1002(7) because she and her beneficiaries are or may become eligible to receive benefits under the Plan. In deciding whether to accept Olympus' offer to take a lump sum distribution and roll over the funds to another financial institution, Ms. Duborg relied upon Milliman's benefits statement. Ms. Duborg reasonably assumed that the methodology supporting the Benefits Statement was tested for accuracy regularly. At Milliman's direction, Ms. Duborg reviewed and confirmed her hire start date and hire end date, and completed and submitted all required paperwork. Based on the information Defendants made available, Ms. Duborg elected to take a lump sum distribution, which she rolled over to her financial institution. On April 7, 2020, a Milliman distribution check was deposited into Ms. Duborg's account. On or about April 8, 2020, Ms. Duborg's financial institution notified her that a stop payment had been placed on the Milliman distribution check, that her account was charged a returned check fee, and that her account balance was zero. Several days after Milliman employed its electronic recoupment process to take back Ms. Duborg's lump sum distribution without her knowledge or consent, Ms. Duborg received Milliman's April 20, 2020 Notice of Overpayment letter explaining Defendants' failure to use the correct interest rate when valuing her pension, which inflated her pension value by 46.26%. Ms. Duborg was deeply distressed by the sudden change in her financial circumstances. In its Notice of Overpayment letter, Milliman did not offer Ms. Duborg a revised election package. Instead, Ms. Duborg was told that a check reflecting the lesser amount would be sent to her financial institution without any further action on her part unless she affirmatively revoked her original election by

signing and returning the revocation from within 30 days. In early 2020, Defendants presented a pension valuation to Ms. Duborg that induced her to elect a lump sum distribution that would help secure her financial future. When Ms. Duborg did not accept Milliman's new and lower valued pension, Milliman unilaterally made a lump sum distribution of the lower amount to her financial institution. Defendants' actions effectively denied Ms. Duborg and other similarly situated Class members the opportunity to dispute Defendants' overpayment claim. It is inequitable for Ms. Duborg and other similarly situated Class members to bear the monetary responsibility of Defendants' mistake.

46.     Plaintiff Felicia Scarola, a resident of Massapequa Park, New York, is a participant in the Plan under 29 U.S.C. § 1002(7) because she and her beneficiaries are or may become eligible to receive benefits under the Plan. In deciding whether to accept Olympus' offer to take a lump sum distribution and roll over the funds to another financial institution, Ms. Scarola relied on the information available through Milliman's benefits statement. Ms. Scarola reasonably assumed that the methodology supporting the Benefits Statement was tested for accuracy regularly. At Milliman's direction, Ms. Scarola reviewed and confirmed her hire start date and hire end date, and completed and submitted all required paperwork. Based on the information Defendants made available, Ms. Scarola elected to take a lump sum distribution, which she rolled over to her financial institution. Ms. Scarola received Milliman's April 17, 2020 Notice of Overpayment letter explaining Defendants' failure to use the correct interest rate when valuing her pension, which error inflated her pension value by 19.06%. Ms. Scarola was distressed by the sudden change in her financial circumstances. In its Notice of Overpayment letter, Milliman did not offer Ms. Scarola a revised election package. Instead, Ms. Scarola was told that a check reflecting the lesser amount would be sent to her financial institution without any further action on her part unless she

affirmatively revoked her original election by signing and returning the revocation from within 30 days. Defendants presented a pension valuation to Ms. Scarola that induced her to elect a lump sum distribution that would help secure her financial future. Defendants' unilateral decision to take back a distributed pension benefit and subsequent redistribution of funds in a lesser amount effectively denied Ms. Scarola and other similarly situated Class members the opportunity to dispute Defendants' overpayment claim. It is inequitable for Ms. Scarola and other similarly situated Class members to bear the monetary responsibility of Defendants' mistake.

47.     Plaintiff Kirk William Mackey, a resident of Garden City, New York, is a participant in the Plan under 29 U.S.C. § 1002(7) because he and his beneficiaries are or may become eligible to receive benefits under the Plan. In deciding whether to accept Olympus' one-time offer to take a lump sum distribution and/or roll over the funds to his financial institution, Mr. Mackey relied upon Milliman's benefits statement. At Milliman's direction Mr. Mackey reviewed and confirmed all requested information, including his personal information, spousal information, his hire start date and hire end date, and his job titles. In reliance on Defendants' representations, Mr. Mackey elected to have his pension funds rolled over into his 401(k) account. When Mr. Mackey received Milliman's April 17, 2020 Notice of Overpayment letter explaining their failure to use the correct interest rates when valuing his pension, he learned that Milliman's mistake allegedly resulted in an overpayment. He was shocked to learn that the lump sum distribution he was offered, and which formed the basis for his decision, was 28.19% higher than the newly calculated amount. Mr.Mackey was told that a check reflecting the lesser amount would be sent to his financial institution without any further action on his part unless he affirmatively revoked his original election by signing and returning the revocation from within 30 days. Defendants' actions caused a significant change in his financial circumstances. Defendants' actions forced Mr. Mackey

to accept a lower pension value when it sent the reduced lump sum distribution directly to Mr. Mackey's financial institution. Defendants' actions effectively denied Mr. Mackey and other similarly situated Class members the opportunity to dispute Milliman's overpayment claim. It is inequitable for Mr. Mackey and other similarly situated Class members to bear the monetary responsibility of Defendants' mistake.

**Rollover Payment Reclaimed Plaintiffs: The following Plaintiffs had Their "ROLLOVER PAYMENT RECLAIMED" Directly by Defendants.**

48.     Plaintiff Janine M. Colon, a resident of Wading River, New York, is a participant in the Plan under 29 U.S.C. § 1002(7) because she and her beneficiaries are or may become eligible to receive benefits under the Plan. In deciding whether to accept Olympus' offer to take a lump sum distribution and roll over the funds to another financial institution, Ms. Colon reasonably relied upon Milliman's benefits statement. At Milliman's direction, Ms. Colon reviewed and confirmed her hire start date and hire end date, and completed and submitted all required paperwork. Based on the information Milliman made available, Ms. Colon elected to take the lump sum distribution and rolled it over to her financial institution. In April 2020, Milliman notified Ms. Colon that Defendants had used the wrong interest rates when calculating her lump sum benefit amount. Ms. Colon was shocked to learn that the lump sum distribution she was offered, and which was the basis for her decision, was 43.21% higher than the newly calculated amount. Milliman advised Ms. Colon that if she failed to revoke her original election no further action would be necessary, and her rollover trustee would return the excess amount to the Plan. Alternatively, if Ms. Colon revoked her original election, Milliman would reclaim the entire distribution and return it to the Plan. Ms. Colon was distressed by this sudden change in her financial circumstances. Defendants' actions effectively denied Ms. Colon and other similarly situated Class members the opportunity to dispute Defendants' overpayment claim.

49.     Plaintiff Barbara T. Rockholt, a resident of Rockhill, South Carolina, is a participant in the Plan under 29 U.S.C. §1002(7) because she and her beneficiaries are or may become eligible to receive benefits under the Plan. In deciding whether to accept Olympus' offer to take a lump sum distribution and roll over the funds to another financial institution, Ms. Rockholt relied on the information available through Milliman's Benefits Statement. Ms. Rockholt reasonably assumed that the methodology supporting the Benefits Statement was tested for accuracy regularly. At Milliman's direction, Ms. Rockholt reviewed and confirmed her hire start date and hire end date, and completed and submitted all required paperwork. Based on the information Milliman made available, Ms. Rockholt elected to receive a lump sum distribution from the Plan. In April 2020, Milliman notified Ms. Rockholt that Defendants had used the wrong interest rates when calculating her distribution. Ms. Rockholt was shocked to learn that the lump sum distribution she was offered, and which was the basis for her decision, was 15.03% higher than the newly calculated amount. Milliman advised Ms. Rockholt that if she failed to revoke her original election no further action would be necessary, and her rollover trustee would return the excess amount to the Olympus Plan. Alternatively, if Ms. Rockholt revoked her original election, Milliman would reclaim the entire lump sum amount and return it to the Plan. Ms. Rockholt was distressed by this change in her financial circumstances and the fact that Milliman had unilaterally substituted the agreed upon distribution with a lesser amount. Defendants' actions effectively denied Ms. Rockholt and other similarly situated Class members the opportunity to dispute Defendants' overpayment claim.

50.     Plaintiff Danielle Logelfo, a resident of McKinney, Texas, is a participant in the Plan under 29 U.S.C. §1002(7) because she and her beneficiaries are or may become eligible to receive benefits under the Plan. In deciding whether to accept Olympus' offer to take a lump sum

distribution and roll over the funds to another financial institution, Ms. Logelfo relied on the information available through Milliman's Benefits Statement. Ms. Logelfo reasonably assumed that the methodology supporting the Benefits Statement was tested for accuracy regularly. At Milliman's direction, Ms. Logelfo reviewed and confirmed her hire start date and hire end date, and completed and submitted all required paperwork. Based on the information Milliman made available, Ms. Logelfo elected to take a lump sum distribution. In April 2020, Milliman notified Ms. Logelfo that Defendants had used the wrong interest rates when calculating her lump sum distribution and, as a result, Ms. Logelfo received an alleged overpayment.Ms. Logelfo was shocked to learn that the lump sum distribution she was offered, and which was the basis for her decision, was 45.82% higher than the newly calculated amount. Ms. Logelfo was distressed by this change in her financial circumstances and the fact that Milliman unilaterally substituted the agreed upon distribution with a significantly lower amount. Milliman advised Ms. Logelfo that if she failed to revoke her original election no further action would be necessary, and her rollover trustee would return the excess amount to the Olympus Plan. Alternatively, if Ms. Logeflo revoked her original election, Milliman would reclaim the entire lump sum amount and return it to the Plan. Defendants' actions effectively denied Ms. Logelfo and other similarly situated Class members the opportunity to dispute Defendants' overpayment claim.

51.     Plaintiff Hiroshi Sekiya, a resident of Schwenksville, Pennsylvania, is a participant in the Plan under 29 U.S.C. §1002(7) because he and his beneficiaries are or may become eligible to receive benefits under the Plan. In deciding whether to accept Olympus' offer to take a lump sum distribution and roll over the funds to another financial institution, Mr. Sekiya reasonably relied upon Milliman's benefits statement. At Milliman's direction, Mr. Sekiya reviewed and confirmed his hire start date and hire end date, and completed and submitted all required

paperwork. Mr. Sekiya was shocked to learn that the lump sum distribution he was offered, and which was the basis for his decision, was 27.62% higher than the newly calculated amount. Based on the information Milliman made available, Mr. Sekiya elected to take a lump sum distribution and rolled it over to his financial institution. In April 2020, Milliman notified Mr. Sekiya that Defendants had used the wrong interest rates when calculating his lump sum distribution amount and, as a result, Mr. Sekiya received an alleged overpayment. Mr. Sekiya was distressed by this change in his financial circumstances and the fact that Milliman unilaterally substituted the agreed upon distribution with a substantially lower amount. Milliman advised Mr. Sekiya that if he failed to revoke his original election no further action would be necessary, and his rollover trustee would return the excess amount to the Olympus Plan. Milliman also advised Mr. Sekiya that if he chose to revoke his original election Milliman would reclaim the entire lump sum amount and return it to the Plan. Defendants' actions effectively denied Mr. Sekiya and other similarly situated Class members the opportunity to dispute Defendants' overpayment claim.

52.     Plaintiff Jay S. Moses, a resident of Kings Park, New York, is a participant in the Plan under 29 U.S.C. §1002(7) because he and his beneficiaries are or may become eligible to receive benefits under the Plan. In deciding whether to accept Olympus' offer to take a lump sum distribution and roll over the funds to another financial institution, Mr. Moses reasonably relied upon Milliman's benefits statement. At Milliman's direction Mr. Moses reviewed and confirmed his hire start date and hire end date, and completed and submitted all required paperwork. Mr. Moses was shocked to learn that the lump sum distribution he was offered, and which was the basis for his decision, was 19.77% higher than the newly calculated amount. Based on the information Defendants made available to him, Mr. Moses elected to take a lump sum distribution and rolled it over to his financial institution. In April 2020, Milliman notified Mr. Moses that

Defendants had used the wrong interest rates when calculating his lump sum benefit and, as a result, Mr. Moses received an alleged overpayment. Mr. Moses was distressed by this change in his financial circumstances and the fact that Milliman had unilaterally substituted the agreed upon lump sum distribution with a substantially lower amount. Milliman advised Mr. Moses that if he failed to revoke his original election no further action would be necessary, and his rollover trustee would return the excess amount to the Olympus Plan.  Milliman also advised Mr. Moses that if he chose to revoke his original election Milliman would reclaim the entire lump sum amount and return it to the Plan. Defendants' actions effectively denied Mr. Moses and other similarly situated Class members the opportunity to dispute Defendants' overpayment claim.

53.     Plaintiff Jennifer L. Aebi, a resident of Flower Mound, Texas, is a participant in the Plan under 29 U.S.C. §1002(7) because she and her beneficiaries are or may become eligible to receive benefits under the Plan. In deciding whether to accept Olympus' offer to take a lump sum distribution and roll over the funds to another financial institution, Ms. Aebi reasonably relied on the information available through Milliman's Benefits Statement. Ms. Aebi was shocked to learn that the lump sum distribution she was offered, and which was the basis for her decision, was 14.76% higher than the newly calculated amount. Ms. Aebi reasonably assumed that the methodology supporting the Benefits Statement was tested for accuracy regularly. At Milliman's direction, Ms. Aebi reviewed and confirmed her hire start date and hire end date, and completed and submitted all required paperwork. Based on the information Milliman made available, Ms. Aebi elected to take a lump sum distribution and rolled it over to her financial institution. In April 2020, Milliman notified Ms. Aebi that Defendants had used the wrong interest rates when calculating her lump sum distribution and, as a result, Ms. Aebi received an alleged overpayment. Ms. Aebi was distressed by this change in her financial circumstances. Milliman advised Ms. Aebi

that if she failed to revoke her original election no further action would be necessary, and her rollover trustee would return the excess amount to the Plan.  Milliman also advised Ms. Aebi that if she chose to revoke her original election Milliman would reclaim the entire lump sum amount and return it to the Plan. Defendants' actions effectively denied Ms. Aebi and other similarly situated Class members the opportunity to dispute Defendants' overpayment claim.

54.      Plaintiff Michael Nuetzmann, a resident of Round Lake, Illinois, is a participant in the Plan under 29 U.S.C. §1002(7) because he and his beneficiaries are or may become eligible to receive benefits under the Plan. In deciding whether to accept Olympus' offer to take a lump sum distribution and roll over his pension funds to another financial institution, Mr. Nuetzmann reasonably relied upon Milliman's benefits statement. At Milliman's direction Mr. Nuetzmann reviewed and confirmed his hire start date and hire end date and completed and submitted all required paperwork. Mr. Nuetzmann was shocked to learn that the lump sum distribution he was offered, and which was the basis for his decision, was 34.98% higher than the newly calculated amount. Based on the information Milliman made available to him, Mr. Nuetzmann elected to take a lump sum distribution and rolled over his pension benefits to his financial institution. In April 2020, Milliman notified Mr. Nuetzmann that Defendants had used the wrong interest rates when calculating his distribution and as a result Mr. Nuetzmann received an alleged overpayment. Mr. Nuetzmann was distressed by this change in his financial circumstances. Milliman advised Mr. Nuetzmann that if he failed to revoke his original election no further action would be necessary, and his rollover trustee would return the excess amount to the Plan.  Milliman also advised Mr. Nuetzmann that if he chose to revoke his original election Milliman would reclaim the entire lump sum amount and return it to the Plan. Defendants' actions effectively denied Mr. Nuetzmann and other similarly situated Class members the opportunity to dispute Defendants' overpayment claim.

55.     Plaintiff Timothy Matthews, a resident of Houma, Louisiana, is a participant in the Plan under 29 U.S.C. §1002(7) because he and his beneficiaries are or may become eligible to receive benefits under the Plan. In deciding whether to accept Olympus' offer to take a lump sum distribution and roll over the funds to another financial institution, Mr. Matthews reasonably relied upon Milliman's Benefits Statement. At Milliman's direction Mr. Matthews reviewed and confirmed his hire start date and hire end date, and completed and submitted all required paperwork. Based on the information Milliman made available to him, Mr. Matthews elected to take a lump sum distribution and rolled over his pension benefit to his financial institution. In April 2020, Milliman notified Mr. Matthews that Defendants had used the wrong interest rates when calculating his benefit and as a result Mr. Matthews received an alleged overpayment. Mr. Matthews was distressed by this sudden change in financial circumstances. Mr. Matthews was shocked to learn that the lump sum distribution he was offered, and which was the basis for his decision, was 23.47% higher than the newly calculated amount. Equally shocking was the fact that Milliman had unilaterally substituted the agreed upon distribution with a substantially lower amount. Milliman advised Mr. Mathews that if he failed to revoke his original election no further action would be necessary, and his rollover trustee would return the excess amount to the Olympus Plan.  Milliman also advised Mr. Matthews that if he chose to revoke his original election Milliman would reclaim the entire lump sum amount and return it to the Plan. Defendants' actions effectively denied Mr. Matthews and other similarly situated Class members the opportunity to dispute Defendants' overpayment claim.

56.     Plaintiff Warren Testa, a resident of Lagrangeville, New York, is a participant in the Plan under 29 U.S.C. §1002(7) because he and his beneficiaries are or may become eligible to receive benefits under the Plan. In deciding whether to accept Olympus' offer to take a lump sum

distribution and roll over the funds to another financial institution, Mr. Testa reasonably relied upon Milliman's Benefits Statement. At Milliman's direction Mr. Testa reviewed and confirmed his hire start date and hire end date, and completed and submitted all required paperwork. Based on the information Milliman made available to him, Mr. Testa elected to take a lump sum distribution and rolled it over to his financial institution. In April 2020, Milliman notified Mr. Testa that Defendants had used the wrong interest rates when calculating his benefit and, as a result, Mr. Testa received an alleged overpayment. Mr. Testa was distressed by this sudden change in his financial circumstances. Mr. Testa was shocked to learn that the lump sum distribution he was offered, and which was the basis for his decision was 25.64% higher than the newly calculated amount. Equally shocking was the fact that Milliman had unilaterally substituted the agreed upon distribution with a substantially lower amount. Milliman advised Mr. Testa that if he failed to revoke his original election no further action would be necessary, and his rollover trustee would return the excess amount to the Plan.  Milliman also advised Mr. Testa that if he chose to revoke his original election Milliman would reclaim the entire lump sum amount and return it to the Plan. Defendants' actions effectively denied Mr. Testa and other similarly situated Class members the opportunity to dispute Defendants' overpayment claim.

57.     Plaintiff Robert Bristel, a resident of Breinigsville, Pennsylvania, is a participant in the Plan under 29 U.S.C. §1002(7) because he and his beneficiaries are or may become eligible to receive benefits under the Plan. In deciding whether to accept Olympus' offer to take a lump sum distribution and roll over the funds to another financial institution, Mr. Bristel reasonably relied upon Milliman's benefits statement. At Milliman's direction Mr. Bristel reviewed and confirmed his hire start date and hire end date, and completed and submitted all required paperwork. Based on the information Defendants made available to him, Mr. Bristel elected to take a lump sum

distribution and rolled it over to his financial institution. In April 2020, Milliman notified Mr. Bristel that Defendants had used the wrong interest rates when calculating his lump sum benefit and, as a result, Mr. Bristel received an alleged overpayment. Mr. Bristel was distressed by this sudden change in his financial circumstances. Mr. Bristel was shocked to learn that the lump sum distribution he was offered, and which was the basis for his decision, was 19.3% higher than the newly calculated amount. Equally shocking was the fact that Milliman had unilaterally substituted the agreed upon distribution of with a substantially lower amount. Milliman advised Mr. Bristel that if he failed to revoke his original election no further action would be necessary, and his rollover trustee would return the excess amount to the Plan. Milliman also advised Mr. Bristel that if he chose to revoke his original election Milliman would reclaim the entire lump sum amount and return it to the Plan. Defendants' actions effectively denied Mr. Bristel and other similarly situated Class members the opportunity to dispute Defendants' overpayment claim.

58. Plaintiff Sherry Noble-Chyla, a resident of Brecksville, Ohio, is a participant in the Plan under 29 U.S.C. §1002(7) because she and her beneficiaries are or may become eligible to receive benefits under the Plan. In deciding whether to accept Olympus' offer to take a lump sum distribution and roll over the funds to another financial institution, Ms. Noble-Chyla reasonably relied on the information available through Milliman's Benefits Statement. Ms. Noble-Chyla reasonably assumed that the methodology supporting the Benefits Statement was tested for accuracy regularly. At Milliman's direction, Ms. Noble-Chyla reviewed and confirmed her hire start date and hire end date, and completed and submitted all required paperwork. Based on the information Milliman made available, Ms. Noble-Chyla elected to take a lump sum distribution and rolled it over to her financial institution. In April 2020, Milliman notified Ms. Noble-Chyla that Defendants had used the wrong interest rates when calculating her benefit and, as a result, Ms.

Noble-Chyla received an alleged overpayment. Ms. Noble-Chyla was distressed by this sudden change in her financial circumstances. Ms. Noble-Chyla was shocked to learn that the lump sum distribution she was offered, and which was the basis for her decision, was 22.77% higher than the newly calculated amount. Equally shocking was the fact that Milliman had unilaterally substituted the agreed upon distribution with a substantially lower amount. Milliman advised Ms. Noble-Chyla that if she failed to revoke her original election no further action would be necessary, and her rollover trustee would return the excess amount to the Plan. Milliman also advised Ms. Noble-Chyla that if she chose to revoke her original election Milliman would reclaim the entire lump sum amount and return it to the Plan. Defendants' actions effectively denied Ms. Noble-Chyla and other similarly situated Class members the opportunity to dispute Defendants' overpayment claim.

59. Plaintiff Paul Franceschini, a resident of Doylestown, Pennsylvania, is a participant in the Plan under 29 U.S.C. §1002(7) because he and his beneficiaries are or may become eligible to receive benefits under the Plan. In deciding whether to accept Olympus' offer to take a lump sum distribution and roll over the funds to another financial institution. Mr. Franceschini reasonably relied upon Milliman's benefits statement. At Milliman's direction Mr. Franceschini reviewed and confirmed his hire start date and hire end date, and completed and submitted all required paperwork. Based on the information Milliman made available to him, Mr. Franceschini elected to take a lump sum distribution and rolled over his pension benefit to his financial institution. In April 2020, Milliman notified Mr. Franceschini that Defendants had used the wrong interest rates when calculating his benefit and as a result Mr. Franceschini received an alleged overpayment. Mr. Franceschini was distressed by this sudden change in his financial circumstances. Mr. Franceschini was shocked to learn that the lump sum distribution he was offered, and which was the basis for his decision, was 21.39% higher than the newly calculated

amount. Equally shocking was the fact that Milliman had unilaterally substituted the agreed upon distribution with a substantially lower amount. Milliman advised Mr. Franceshini that if he failed to revoke his original election no further action would be necessary, and his rollover trustee would return the excess amount to the Olympus Plan Defendants' actions effectively denied Mr. Franceschini and other similarly situated Class members the opportunity to dispute Defendants' overpayment claim.

60.     Plaintiff Debra Murray, a resident of Nevada, Texas, is a participant in the Plan under 29 U.S.C. §1002(7) because she and her beneficiaries are or may become eligible to receive benefits under the Plan. In deciding whether to accept Olympus' offer to take a lump sum distribution and roll over the funds to another financial institution, Ms. Murray reasonably relied on the information available through Milliman's Benefits Statement. Ms. Murray reasonably assumed that the methodology supporting the Benefits Statement was tested for accuracy regularly. At Milliman's direction, Ms. Murray reviewed and confirmed her hire start date and hire end date, and completed and submitted all required paperwork. Based on the information Defendants made available, Ms. Murray elected to take a lump sum distribution and rolled it over to her financial institution. In April 2020, Milliman notified Ms. Murray that Defendants had used the wrong interest rates when calculating her distribution and, as a result, Ms. Murray received an alleged overpayment. Ms. Murray was distressed by the change in her financial circumstances. Ms. Murray was shocked to learn that the lump sum distribution she was offered, and which was the basis for her decision, was 21.85% higher than the newly calculated amount. Equally shocking was the fact that Milliman had unilaterally substituted the agreed upon distribution with a substantially lower amount. Milliman advised Ms. Murray that if she failed to revoke her original election no further action would be necessary, and her rollover trustee would return the excess amount to the Olympus

Plan.  Milliman also advised Ms. Murray that if she chose to revoke her original election Milliman would reclaim the entire lump sum amount and return it to the Plan. Milliman's actions effectively denied Ms. Murray and other similarly situated Class members the opportunity to dispute Defendants' overpayment claim. It is inequitable for Ms. Murray and other similarly situated Class members to bear the monetary responsibility of Milliman's mistake.

61.     Plaintiff John Samuel Chilcutt, a resident of Cross Plains, Tennessee, is a participant under the Plan under 29 U.S.C. § 1002(7) because he and his beneficiaries are or may become eligible to receive benefits under the Plan. In deciding whether to accept Olympus' one-time offer to take a lump sum pension distribution and/or roll over the funds to another financial institution, Mr. Chilcutt reasonably relied upon Milliman's Benefits Statement. At Milliman's direction, Mr. Chilcutt reviewed and confirmed all requested information including his spousal information, his hire start date and hire end date, and his job titles.  Mr. Chilcutt saw the lump sum distribution as the opportunity to secure his financial future. Mr. Chilcutt's distribution was rolled over to a 401(k). When Mr. Chilcutt received Milliman's April 21, 2020 Notice of Overpayment letter explaining Defendants' failure to use the correct interest rate when valuing his pension, he was shocked to learn that the lump sum distribution he was offered, and, which formed the basis for his decision, was 14.35% higher than the newly calculated amount. He also learned that Milliman unilaterally contacted his financial institution and reclaimed the overpayment. Defendants' actions forced Mr. Chilcutt to accept a lower pension benefit. Mr. Chilcutt was also advised that if he chose to revoke the original election Milliman would reclaim all funds sent to the financial institution. Milliman's actions effectively denied Mr. Chilcutt and other similarly situated Class members the opportunity to dispute Defendants' overpayment claim. It is inequitable for Mr. Chilcutt and other similarly situated Class members to bear the monetary

responsibility of Defendants' mistake.

62.     Plaintiff Randall Orner, a resident of North Redington Beach, Florida, is a participant in the Plan under 29 U.S.C. §1002(7) because he and his beneficiaries are or may become eligible to receive benefits under the Plan. In deciding whether to accept Olympus' offer to take a lump sum distribution and roll over the funds to another financial institution, Mr. Orner reasonably relied upon Milliman's benefits statement. At Milliman's direction, Mr. Orner reviewed and confirmed his hire start date and hire end date, and completed and submitted all required paperwork. Mr. Orner was shocked to learn that the lump sum distribution he was offered, and which was the basis for his decision, was 30.73% higher than the newly calculated amount. Based on the information Milliman made available, Mr. Orner elected to take a lump sum distribution and rolled it over to his financial institution. In April 2020, Milliman notified Mr. Orner that Defendants had used the wrong interest rates when calculating his lump sum distribution amount and, as a result, Mr. Orner received an alleged overpayment. Mr. Orner was distressed by this change in his financial circumstances and the fact that Milliman unilaterally substituted the agreed upon distribution with a substantially lower amount. Milliman advised Mr. Orner that if he failed to revoke his original election no further action would be necessary, and his rollover trustee would return the excess amount to the Olympus Plan. Milliman also advised Mr. Orner that if he chose to revoke his original election Milliman would reclaim the entire lump sum amount and return it to the Plan. Defendants' actions effectively denied Mr. Orner and other similarly situated Class members the opportunity to dispute Defendants' mistake.

**Rollover Not Stopped Plaintiffs: The following Plaintiffs Were Notified That Their "ROLLOVER NOT STOPPED" and They Should Contact Their Provider to Have the Overpayment Returned to the Plan.**

63.     Plaintiff Linda Alkins-Lallave, a resident of Newark, New Jersey, is a participant

in the Plan under 29 U.S.C. §1002(7) because she and her beneficiaries are or may become eligible to receive benefits under the Plan. Plaintiff Alkins-Lallave reasonably relied upon Milliman's benefits statement when considering Olympus' offer to take a lump sum distribution. At Milliman's direction Ms. Alkins-Lallave reviewed and confirmed her hire start date and hire end date, and completed and submitted all required paperwork. Ms. Alkins-Lallave relied on Milliman's statement of pension value when she elected to take a lump sum distribution and rolled it over to her financial institution. Milliman's April 2020 Notice of Overpayment letter explained that Ms. Alkins-Lallave received an overpayment because Defendants used the wrong interest rates when calculating pension values. The letter advised Ms. Alkins-Lallave that Milliman would correct the purported error by taking back the alleged overpayment. Ms. Alkins-Lallave's election decision had been based on a pension benefit represented to be valued 20.58% higher than the newly calculated amount. That valuation difference caused a substantial loss to Ms. Alkins-Lallave. Had she known the true pension benefit value when presented with the election offer Ms. Alkins-Lallave would have considered a different financial path. It is inequitable for Ms. Alkins-Lallave and other similarly situated Class members to bear the monetary responsibility of Defendants' mistake.

64.     Plaintiff Charles Zerbo, a resident of Frisco, Texas, is a participant in the Plan under 29 U.S.C. §1002(7) because he and his beneficiaries are or may become eligible to receive benefits under the Plan. Mr. Zerbo reasonably relied upon Milliman's benefits statement when considering Olympus' offer to take a lump sum distribution. At Milliman's direction Mr. Zerbo reviewed and confirmed his hire start date and hire end date, and completed and submitted all required paperwork. Mr. Zerbo relied on Milliman's statement of pension value when he elected to take a lump sum distribution and rolled it over to his financial institution. Milliman's April 2020 Notice

of Overpayment letter claimed that Defendants overvalued Mr. Zerbo's pension because they used the wrong interest rates when calculating pension values. The letter advised Mr. Zerbo that Milliman would correct the purported error by taking back the alleged overpayment. Mr. Zerbo's election decision was based on a pension represented to be valued 28.88% higher than the newly calculated amount. When presented with the election of benefits, if Mr. Zerbo had been presented with the true pension value rather than the inflated pension value, Mr. Zerbo would have considered a different financial path. It is inequitable for Mr. Zerbo and other similarly situated Class members to bear the monetary responsibility of Defendants' mistake.

65.     Plaintiff Robert Morse, a resident of Downingtown, Pennsylvania, is a participant under the Plan under 29 U.S.C. § 1002(7) because he and his beneficiaries are or may become eligible to receive benefits under the Plan. Plaintiff Morse reasonably relied upon Milliman's benefits statement when considering Olympus' offer to take a lump sum distribution. At Milliman's direction Mr. Morse reviewed and confirmed his hire start date and hire end date, and completed and submitted all required paperwork. Planning ahead for a secure financial future, Mr. Morse relied on Milliman's statement of pension value when he elected to take a lump sum distribution and rolled it over to his financial institution. Milliman's April 2020 Notice of Overpayment letter claimed that Defendants had overvalued Mr. Morse's pension because they used the wrong interest rates when calculating pension values. The letter went on to advise Mr. Morse that Milliman would correct the purported error by taking back the alleged overpayment. Mr. Morse's election decision was based on a pension represented to be valued 26.35% higher than the newly calculated amount. If Mr. Morse had been presented with the true pension value rather than the inflated pension value, Mr. Morse would have considered a different financial path. It is inequitable for Mr. Morse and other similarly situated Class members to bear the monetary

responsibility of Defendants' mistake.

66.     Plaintiff Maria Calvin, a resident of San Clemente, California, is a participant under the Plan under 29 U.S.C. § 1002(7) because she and her beneficiaries are or may become eligible to receive benefits under the Plan. Plaintiff Calvin reasonably relied upon Milliman's benefits statement when considering Olympus' offer to take a lump sum distribution. At Milliman's direction, Ms. Calvin reviewed and confirmed her hire start date and hire end date and completed and submitted all required paperwork. Ms. Calvin relied on Milliman's statement of pension value when she elected to take a lump sum distribution and rolled it over to her financial institution. Milliman's April 2020 Notice of Overpayment letter claimed that Defendants had overvalued Ms. Calvin's pension because they used the wrong interest rates when calculating pension values. The letter advised Ms. Calvin that Milliman would correct the purported error by taking back the alleged overpayment. Ms. Calvin's election decision was based on a pension benefit represented to be valued 16.97% higher than the newly calculated amount. If Ms. Calvin had been presented with the true pension value rather than the inflated pension value, Ms. Calvin would have considered a different financial path. It is inequitable for Ms. Calvin and other similarly situated Class members to bear the monetary responsibility of Defendants' mistake.

67.     Plaintiff Jeffrey Intermesoli, a resident of Sayville, New York, is a participant under the Plan under 29 U.S.C. § 1002(7) because he and his beneficiaries are or may become eligible to receive benefits under the Plan. Plaintiff Intermesoli reasonably relied upon Milliman's benefits statement when considering Olympus' offer to take a lump sum distribution. At Milliman's direction Mr. Intermesoli reviewed and confirmed his hire start date and hire end date and completed and submitted all required paperwork. Milliman's Benefits Statement represented that Mr. Intermesoli was eligible to receive a lump sum distribution. Planning ahead for a secure

financial future, Mr. Intermesoli relied on Defendants' statement of pension value when he elected to take a lump sum distribution and rolled it over to his financial institution. Milliman's April 2020 Notice of Overpayment letter claimed that Defendants had overvalued Mr. Intermesoli's pension because they used the wrong interest rates when calculating pension values. The letter went on to advise Mr. Intermesoli that Milliman would correct the purported error by taking back the overpayment. Mr. Intermesoli's election decision was based on a pension represented to be valued 34.87% greater than the newly calculated amount. If Mr. Intermesoli had been presented with the true pension value rather than the inflated pension value, Mr. Intermesoli would have considered a different financial path. It is inequitable for Mr. Intermesoli and other similarly situated Class members to bear the monetary responsibility of Defendants' mistake.

**Total Lump Sum Payout Plaintiffs: The following Plaintiffs had a "TOTAL LUMP SUM PAYOUT" paid to them directly. They were provided with a choice to either return the overpaymet and repay any taxes withheld from the payment or revoke their original election and return all fund plus interest depending on date of repayment.**

68.     Plaintiff Gustav Martinez, a resident of Farmingville, New York, is a participant under the Plan under 29 U.S.C. § 1002(7) because he and his beneficiaries are or may become eligible to receive benefits under the Plan. In deciding whether to accept Olympus' one-time offer to take a lump sum pension distribution and/or roll over the funds to another financial institution, Mr. Martinez reasonably relied upon Milliman's Benefits Statement. At Milliman's direction, Mr. Martinez reviewed and confirmed all required information including: his spousal information, his hire start date and hire end date, and his job titles. Mr. Martinez used the lump sum distribution for a down payment on a family home. Because Mr. Martinez elected to receive the lump sum distribution in cash, the requisite taxes were withheld. Then in April 2020, Milliman sent a Notice of Overpayment letter to Mr. Martinez claiming that he was overpaid pension benefits and that he was obligated to return the overpayment to the Plan. Milliman explained the lump sum pension

value had to be recalculated using different interest rates. Mr. Martinez lacks the financial ability

to remit the overpayment because he invested his pension benefits in his family home, which is

not a liquid asset. Mr. Martinez's election decision was based on a pension represented to be valued

41.29% greater than the newly calculated amount. Mr. Martinez would have evaluated his election

options differently if not for Defendants' representations and he would have used the funds

differently had he known the true value of his pension benefit. Thus, it is inequitable for Mr.

Martinez and other similarly situated Class members to bear the monetary responsibility of

Defendants' mistake.

69.      Plaintiff Scott Shellenbarger, a resident of Navarre, Florida, is a participant in the

Plan under 29 U.S.C. § 1002(7) because he and his beneficiaries are or may become eligible to

receive benefits under the Plan. In deciding whether to accept Olympus' offer to take a lump sum

distribution and roll over the funds to another financial institution, Mr. Shellenbarger relied upon

Milliman's benefits statement. At Milliman's direction, Mr. Shellenbarger reviewed and

confirmed his hire start date and hire end date, and completed and submitted all required

paperwork. Based on the information Milliman made available, Mr. Shellenbarger took the lump

sum distribution and rolled it over to his financial institution. In April 2020, Milliman notified Mr.

Shellenbarger that Defendants had used the wrong interest rates when calculating his distribution.

Mr. Shellenbarger was shocked to learn that the lump sum distribution he was offered, and which

was the basis for his decision, was 37.38% higher than the newly calculated amount. Milliman

advised Mr. Shellenbarger that if he failed to revoke his original election no further action would

be necessary, and his rollover trustee would return the excess amount to the Plan. Alternatively, if

Mr. Shellenbarger revoked his original election, Milliman would reclaim the entire lump sum

amount and return it to the Plan. In fact, Mr. Shellenbarger's funds are now in an illiquid

investment.  Mr. Shellenbarger was distressed by this change in his financial circumstances and Milliman's attempted substitution of the agreed upon distribution with a lesser amount. It is inequitable for Mr. Shellenbarger and other similarly situated Class members to bear the monetary responsibility of Defendants' mistake.

70.    Plaintiff Susan A. Granieri, a resident of Lake Grove, New York, is a participant under the Plan under 29 U.S.C. § 1002(7) because she and her beneficiaries are or may become eligible to receive benefits under the Plan. In deciding whether to accept Olympus' one-time offer to take a lump sum pension distribution and/or roll over the funds to another financial institution, Ms. Granieri reasonably relied upon Milliman's Benefits Statement. At Milliman's direction, Ms. Granieri reviewed and confirmed all requested information, including her spousal information, her hire start date and hire end date, and her job titles. Ms. Granieri planned to use her lump sum distribution in order to relieve her financial strain. Because Ms. Granieri elected to receive the lump sum distribution in cash, the requisite taxes were withheld. Ms. Granieri deposited the check and used the money to make purchases she would not have made but for the distribution. Ms. Granieri's financial relief was replaced with distress when she received Milliman's Notice of Overpayment letter in April 2020, which claimed that she was overpaid because Defendants had used the wrong interest rates when they calculated her lump sum pension value. Ms. Granieri was shocked to learn that the lump sum distribution she was offered, and which was the basis for her decision, was valued 15.37% greater than the newly calculated amount. Milliman demanded that she immediately return the alleged overpayment to the Plan. Ms. Granieri is without the financial resources to repay those funds. Ms. Granieri would have evaluated her election options differently if not for Defendants' representations and she would have used the funds differently had she known of the alleged overpayment. It is inequitable for Ms. Granieri and other similarly situated Class

members to bear the monetary responsibility of Defendants' mistake.

71.     Plaintiff Nadine Clark, a resident of Telford, Pennsylvania, is a participant under the Plan under 29 U.S.C. § 1002(7) because she and her beneficiaries are or may become eligible to receive benefits under the Plan. In deciding whether to accept Olympus' one-time offer to take a lump sum pension distribution and/or roll over the funds to another financial institution, Ms. Clark reasonably relied upon Milliman's Benefits Statement. At Milliman's direction, Ms. Clark reviewed and confirmed all requested information including her spousal information, her hire start date and hire end date, and her job titles. With a spouse unemployed due to Covid-19 and a weak job market, Ms. Clark saw the lump sum distribution as an opportunity to relieve her family's mounting financial difficulties. Because Ms. Clark elected to receive the lump sum distribution in cash, and being ever cautious, she had 35% withheld for taxes. On or about April 2, 2020, Ms. Clark received her net distribution, deposited it on the same date, it cleared the bank on April 8, 2020, and she used the funds to pay off certain debts on April 9, 2020. On or about April 20, 2020, Ms. Clark received Milliman's Notice of Overpayment letter. Ms. Clark was shocked to learn that the lump sum distribution she was offered, and which formed the basis for her decision, was 39.08% higher than Defendants' newly calculated amount. Milliman's letter demanded that Ms. Clark immediately return the overpayment to the Plan. Ms. Clark lacks the financial ability to remit those funds. If at the time of the offer, Ms. Clark had known of the lower value of her pension, her election may have been different, and her use of funds would have been different. Ms. Clark relied to her detriment on Defendants' representations in making her financial decision to accept a lump sum cash distribution. It is inequitable for Ms. Clark and other similarly situated Class members to bear the monetary responsibility of Defendants' mistake.

72.     Plaintiff Robert Reed, a resident of Sandy, Oregon, is a participant under the Plan

under 29 U.S.C. § 1002(7) because he and his beneficiaries are or may become eligible to receive benefits under the Plan. In deciding whether to accept Olympus' one-time offer to take a lump sum pension distribution and roll over the funds to another financial institution, Mr. Reed reasonably relied upon Milliman's Benefits Statement. At Milliman's direction Mr. Reed reviewed and confirmed all requested information, including his personal information, spousal information, his hire start date and hire end date, and his job titles. Mr. Reed used the lump sum distribution for a down payment on a family home. Because Mr. Reed elected to receive the lump sum distribution in cash, the requisite taxes were withheld from his distribution. Then, in April 2020, Mr. Reed received Milliman's Notice of Overpayment claiming that the value of the lump sum distribution was less than previously represented and that Defendants intended to hold Mr. Reed was responsible for their mistake. Mr. Reed was shocked to learn that the lump sum distribution he was offered, and which formed the basis for his decision, was 28.30% greater than Milliman's newly calculated amount. Mr. Reed lacks the financial ability to remit those funds to the Plan. Mr. Reed relied on Defendants' original lump sum distribution valuation to his detriment. Mr. Reed would have evaluated his election options differently but for Defendants' erroneous representations, and he would have used the funds differently had he known of the alleged overpayment. It is inequitable for Mr. Reed and other similarly situated Class members to bear the monetary responsibility of Defendants' mistake.

73. Plaintiff Eric Godduhn, a resident of Macungie, Pennsylvania, is a participant under the Plan under 29 U.S.C. § 1002(7) because he and his beneficiaries are or may become eligible to receive benefits under the Plan. In deciding whether to accept Olympus' one-time offer to take a lump sum pension distribution and/or roll over the funds to another financial institution, Mr. Godduhn reasonably relied upon Milliman's Benefits Statement. At Milliman's direction, Mr.

Godduhn reviewed and confirmed all requested information including his spousal information, his hire start date and hire end date, and his job titles. Milliman's Benefits Statement represented that Mr. Godduhn was eligible to receive a lump sum distribution of a certain amount. Mr. Godduhn saw the lump sum distribution as the opportunity to secure his financial future. In reliance on Defendants' representations, Mr. Godduhn reviewed, completed, and submitted all paperwork. Mr. Godduhn received his distribution of his lump sum and deposited it into his checking account then invested the funds. On or about April 20, 2020, Mr. Godduhn received Milliman's Notice of Overpayment letter claiming that his original benefit amount was overvalued by 17.32% resulting in an overpayment, which Mr. Godduhn was responsible to return to the Plan. Godduhn lacks the financial ability to remit those funds as the funds are invested in illiquid assets. If at the time of the offer, Mr. Godduhn had known that Defendants' lump sum distribution value was an inflated, Mr. Godduhn's election may have been different, and his use of those funds would have been different. Mr. Godduhn relied on Milliman's representations in making his financial decision to accept a lump sum cash distribution. It is inequitable for Mr. Godduhn and other similarly situated Class members to bear the monetary responsibility of Defendants' mistake.

74.     Plaintiff Marco Merino, a resident of Kennesaw, Georgia, is a participant in the Plan under 29 U.S.C. §1002(7) because he and his beneficiaries are or may become eligible to receive benefits under the Plan. Mr. Merino reasonably relied upon Milliman's benefits statement when considering Olympus' offer to take a lump sum distribution. At Milliman's direction, Mr. Merino reviewed and confirmed his hire start date and hire end date, and completed and submitted all required paperwork. Planning ahead for a secure financial future, Mr. Merino relied on Milliman's statement of pension value when he elected to take a lump sum distribution and rolled it over to his financial institution. Milliman's April 2020 Notice of Overpayment letter claimed

that Defendants overvalued Mr. Merino's pension because they used the wrong interest rates when calculating pension values. The letter advised Mr. Merino that Milliman would correct the purported error by taking back the alleged overpayment. Mr. Merino's election decision was based on a pension represented to be valued 35.42% higher than the newly calculated amount. If Mr. Merino had been presented with the true pension value rather than the inflated pension value, Mr. Merino would have considered a different financial path. It is inequitable for Mr. Merino and other similarly situated Class members to bear the monetary responsibility of Defendants' mistake.

75.     Plaintiff Peter McGahan, a resident of St. Petersburg, Florida, is a participant in the Plan under 29 U.S.C. §1002(7) because he and his beneficiaries are or may become eligible to receive benefits under the Plan. Mr. McGahan reasonably relied upon Milliman's benefits statement when considering Olympus' offer to take a lump sum distribution. At Milliman's direction, Mr. McGahan reviewed and confirmed his hire start date and hire end date, and completed and submitted all required paperwork. Planning ahead for a secure financial future, Mr. McGahan relied on Milliman's statement of pension value when he elected to take a lump sum distribution and rolled it over to his financial institution. Milliman's April 2020 Notice of Overpayment letter claimed that Defendants overvalued Mr. McGahan's pension because they used the wrong interest rates when calculating pension values. The letter advised Mr. McGahan that Milliman would correct the purported error by taking back the alleged overpayment. Mr. McGahan's election decision was based on a pension represented to be valued 23.818% higher than the newly calculated amount. If Mr. McGahan had been presented with the true pension value rather than the inflated pension value, Mr. McGahan would have considered a different financial path. It is inequitable for Mr. McGahan and other similarly situated Class members to bear the monetary responsibility of Defendants' mistake.

76.     Plaintiff Norman Rich, a resident of Laguna Niguel, California, is a participant in the Plan under 29 U.S.C. §1002(7) because he and his beneficiaries are or may become eligible to receive benefits under the Plan. Mr. Rich reasonably relied upon Milliman's benefits statement when considering Olympus' offer to take a lump sum distribution. At Milliman's direction, Mr. Rich reviewed and confirmed his hire start date and hire end date, and completed and submitted all required paperwork. Planning ahead for a secure financial future, Mr. Rich relied on Milliman's statement of pension value when he elected to take a lump sum distribution and rolled it over to his financial institution. Milliman's April 2020 Notice of Overpayment letter claimed that Defendants overvalued Mr. Rich's pension because they used the wrong interest rates when calculating pension values. The letter advised Mr. Rich that Milliman would correct the purported error by taking back the alleged overpayment. Mr. Rich's election decision was based on a pension represented to be valued 16.86% higher than the newly calculated amount. If Mr. Rich had been presented with the true pension value rather than the inflated pension value, Mr. Rich would have considered a different financial path. It is inequitable for Mr. Rich and other similarly situated Class members to bear the monetary responsibility of Defendants' mistake.

77.     Plaintiff Gary K. Price, a resident of Bay Shore, New York, is a participant in the Plan under 29 U.S.C. §1002(7) because he and his beneficiaries are or may become eligible to receive benefits under the Plan. Mr. Price reasonably relied upon Milliman's benefits statement when considering Olympus' offer to take a lump sum distribution. At Milliman's direction, Mr. Price reviewed and confirmed his hire start date and hire end date, and completed and submitted all required paperwork. Mr. Price relied on Milliman's statement of pension value when he elected to take a lump sum distribution and rolled it over to his financial institution. Milliman's April 2020 Notice of Overpayment letter claimed that Defendants overvalued Mr. Price's pension because

they used the wrong interest rates when calculating pension values. The letter advised Mr. Price that Milliman would correct the purported error by taking back the alleged overpayment. Mr. Price's election decision was based on a pension represented to be valued 23.92% higher than the newly calculated amount. If Mr. Price had been presented with the true pension value rather than the inflated pension value, he would have considered a different financial path. It is inequitable for Mr. Price and other similarly situated Class members to bear the monetary responsibility of Defendants' mistake.

78.     Plaintiff Elise L. Arnone, a resident of Long Beach, New York, is a participant in the Plan under 29 U.S.C. §1002(7) because she and her beneficiaries are or may become eligible to receive benefits under the Plan. Ms. Arnone reasonably relied upon Milliman's benefits statement when considering Olympus' offer to take a lump sum distribution. At Milliman's direction, Ms. Arnone reviewed and confirmed her hire start date and hire end date, and completed and submitted all required paperwork. Ms. Arnone relied on Milliman's statement of pension value when she elected to take a lump sum distribution and rolled it over to her financial institution. Milliman's April 2020 Notice of Overpayment letter claimed that Defendants overvalued Ms. Arnone's pension because they used the wrong interest rates when calculating pension values. The letter advised Ms. Arnone that Milliman would correct the purported error by taking back the alleged overpayment amount. Ms. Arnone's election decision was based on a pension represented to be valued 20.5% higher than the newly calculated amount. If Ms. Arnone had been presented with the true pension value rather than the inflated pension value, she would have considered a different financial path. It is inequitable for Ms. Arnone and other similarly situated Class members to bear the monetary responsibility of Defendants' mistake.

**Cashed Direct Distribution Plaintiffs: The following Plaintiffs had "ROLLOVER NOT STOPPED AND CASHED DIRECT DISTRIBUTION," i.e., Plaintiffs kept their original**

**election and Defendants demanded that the overpayment amount be returned to the Plan either by a financial provider or by personal check.**

79.     Plaintiff Christopher Barnes, a resident of Arlington, Texas, is a participant under the Plan under 29 U.S.C. § 1002(7) because he and his beneficiaries are or may become eligible to receive benefits under the Plan. In deciding whether to accept Olympus' offer to take a lump sum pension distribution and roll over the funds to another financial institution, Mr. Barnes reasonably relied upon Milliman's Benefits Statement. At Milliman's direction, Mr. Barnes reviewed and confirmed all requested information including his spousal information, his hire start date and hire end date, and his job titles. Mr. Barnes consulted with his financial advisor, investigated his options, and based on Defendants' lump sum distribution valuation, concluded that this opportunity would enable him to secure his financial future and provided him with some immediate relief for his current financial difficulties. In reliance on Defendants' lump sum distribution valuation, Mr. Barnes elected to split his pension distribution and rolled over a portion of the funds into a qualified retirement plan, and received the remainder in a cash out sum with the requisite amount withheld for taxes. Mr. Barnes used the cash portion to make purchases he would not have made but for the Defendants' errors. Mr. Barnes' financial relief was replaced with distress when he received Milliman's April 28, 2020 Notice of Overpayment letter claiming that Defendants' pension calculations were based on the wrong interest rates. Mr. Barnes was shocked to learn that the lump sum distribution he was offered, and upon which he based his election, was 23.47% higher than the newly calculated amount. Milliman advised Mr. Barnes that he could revoke his original election, in which case Milliman would send him a Letter of Indemnity to forward to his financial institution. But for Defendants' erroneous valuation, Mr. Barnes would have used his pension benefits differently. Currently, Mr. Barnes lacks the financial ability to repay the alleged overpayment that Defendants claim he owes. Thus, Mr. Barnes relied on Defendants'

pension valuation to his detriment. It is inequitable for Mr. Barnes and other similarly situated Class members to bear the monetary responsibility of Defendants' mistake.

80.     Plaintiff Debra Ladenheim, a resident of Smithtown, New York, is a participant under the Plan under 29 U.S.C. § 1002(7) because she and her beneficiaries are or may become eligible to receive benefits under the Plan. In deciding whether to accept Olympus' offer to take a lump sum pension distribution and roll over the funds to another financial institution, Ms. Ladenheim reasonably relied upon Milliman's Benefits Statement. At Milliman's direction Ms. Ladenheim reviewed and confirmed all requested information, including her spousal information, her hire start date and hire end date, and her job titles. Ms. Ladenheim consulted with her financial advisor, considered the options presented to her by Milliman, and based on Defendants' lump sum distribution valuation, she concluded that taking the lump sum offer would help relieve her financial burdens and help to secure her financial future. In reliance on Defendants' lump sum distribution valuation, Ms. Ladenheim elected to split her retirement distribution, rolling over a portion of the funds into a qualified retirement plan, and receiving a cash out sum with the requisite amount withheld for taxes. Ms. Ladenheim used these funds to make purchases she would not have made but for the lump sum distribution. Ms. Ladenheim's financial relief was replaced with distress when she received Milliman's April 28, 2020 Notice of Overpayment claiming that Defendants used the wrong interest rates when valuing her lump sum distribution. Ms. Ladenheim was shocked to learn that the lump sum distribution she was offered, and which was the basis for her decision, was 22.77% greater than the newly calculated amount. Equally shocking was learning that Defendants expected her to return the alleged overpayment to the Plan immediately. Alternatively, Milliman advised Ms. Ladenheim that she could revoke her original election, in which case Milliman would send her a Letter of Indemnity for her to forward to her financial

institution. But for Defendants' erroneous lump sum valuation, Ms. Ladenheim would have used her pension resources differently. Currently, Ms. Ladenheim is without the financial resources to pay the Plan the alleged overpayment. Thus, Ms. Ladenheim relied on Defendants' lump sum distribution valuation to her detriment. It is inequitable for Ms. Ladenheim and other similarly situated Class members to bear the monetary responsibility of Defendants' mistake.

## DEFENDANTS

81.    Defendant Olympus Corporation of the Americas is the United States subsidiary of Olympus Corporation, a Japan based company. Olympus sells and distributes medical optics and imaging equipment, including endoscopes, ultrasound systems, and clinical microscopes throughout the United States. Olympus maintains its principal place of business within the Eastern District of Pennsylvania at 3500 Corporate Parkway, Center Valley, PA 18034.

82.    The Benefits Administrative Committee of Olympus is the Plan Administrator under 29 U.S.C. §1002(16)(A)(i), and upon information and belief, with exclusive responsibility and complete discretionary authority to control the operation, management and administration of the Plan, with all powers necessary to enable it properly to carry out such responsibilities, including the calculation of the benefits provided by the Plan and the administration of the Plan in accordance with its terms.

83.    Olympus and the Benefits Administrative Committee of Olympus are fiduciaries to the Plan because they exercised discretionary authority or discretionary control respecting the management of the Plan or exercised authority or control respecting the management or disposition of its assets and have discretionary authority or discretionary responsibility for the administration of the Plan. 29 U.S.C. §1002(21)(A)(i) and (iii).

84.    Each member of the Committee was a fiduciary of the Plan at all times relevant to

this action, within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A), because each Committee member exercised discretionary authority over management or disposition of Plan assets.

85.     Each of the unnamed members of the Committee during the time period relevant to this action are referred to herein as John Does 1-10.

## FACTS APPLICABLE TO ALL COUNTS

**I. Plan Terms**

86.     The automatic form of pension benefit for a retiree who is married is a joint and 50% survivor annuity, meaning that the retiree will receive a monthly benefit for his or her life and after his or her death the surviving spouse will receive a monthly benefit for the balance of his or her life equal to 50% of the amount payable to the retiree.

87.     Other than the two lump sum distribution windows described above, and the cash-out of small benefits described below, the Plan does not permit retirees to receive their benefits in a single lump sum distribution.

88.     The Plan does, however, include specific provisions for calculating the lump sum present value of a participant's benefit. For one thing, in accordance with applicable law, the Plan provides that if the present lump sum value of the benefit of a Deferred Vested Participant is equal to or less than $5,000, that benefit will be involuntarily cashed out after the participant's termination of employment with Olympus.

89.     Additionally, the Plan, like all other defined benefit pension plans covered by ERISA, is subject to minimum funding requirements. In order to determine whether a plan is adequately funded, a plan sponsor must know how much money is required at normal retirement to provide each participant's guaranteed accrued benefit, assuming that those funds will earn a

certain investment return over the participant's lifetime.

90.     Section 2.2(b)(1)(D) of the Plan provides that the applicable interest rate means the adjusted first, second and third segment rates, applied under rules similar to the rules of Internal Revenue Code Section 430(h)(2)(C), for the fifth calendar month preceding the first day of the plan year during which the annuity starting date occurs.

91.     Section 411(a)(11) of the Internal Revenue Code prohibits a pension plan from distributing a participant's benefit without his or her consent if the present value of the accrued benefit exceeds $5,000.

92.     The present value of the accrued benefit of each of the named Plaintiffs and all members of the Class exceed $5,000.

93.     Accordingly, the benefits of Plaintiffs and the members of the Class could not be distributed without their consent.

94.     Section 417 of the Internal Revenue Code provides that a married participant may not elect a form of benefit other than a qualified joint and survivor annuity without the express notarized written consent of his or her spouse.

95.     Section 6.6(a) of the plan, as required by Internal Revenue Code Section 417(a)(3), provides that prior to a participant's consent to receive a distribution from the Plan, the participant must receive a notification of the material features of, and an explanation of the relative values of, the optional forms of benefit available under the Plan. That explanation must be provided no less than 30 days and no more than 180 days prior to the annuity starting date.

96.     As described above, the Lump Sum Offer Letters contain the wrong information about the value of the lump sum distribution for all Deferred Vested Participants and, therefore, the relative value of all optional forms of benefit available under the Plan.

97.     As a result of those serious errors in the most material aspect of the explanation, the participants' consents to a lump sum distribution made in reply to the Lump Sum Offer Letter were invalid.

98.     Moreover, as a result of the serious errors in the most material aspect of the explanation, the consent of the spouse of each married Deferred Vested Participant to waive his or her right to a qualified joint and survivor annuity was invalid.

99.     The correct information regarding the value of lump sum benefits and the relative value of the other optional forms of benefit was not provided to any of the Deferred Vested Participants (i.e., the Class) until at least April 9, 2020.

100.     Internal Revenue Code section 417(f)(2)(A) defines term "annuity starting date" in the case of a benefit not payable in the form of an annuity (*e.g.*, a lump sum), to mean the first day on which all events have occurred which entitle the participant to such benefit.

101.     Since neither the participant nor his or her spouse validly consented to the distribution or to the waiver of the qualified joint and survivor annuity, all events entitling those Deferred Vested Participants to receive a lump sum distribution from the Plan had not occurred prior to April 1, 2020. Therefore, the annuity starting date for all deferred vested participants did not occur until after April 1, 2020—the beginning of the 2020 Plan year.

102.     Since the annuity starting date for all deferred vested participants occurred after April 1, 2020, the applicable interest rates for determining the lump sum present value of their accrued benefit must be based on the interest rates in effect for November 2019 and not the rates in effect for the prior Plan year.

**ERISA'S FIDUCIARY STANDARDS**

103.   ERISA imposes strict fiduciary duties of loyalty and prudence upon the Defendants as fiduciaries of the Plan. Specifically, 29 U.S.C. §1104(a)(1), states, in relevant part, that:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –
>
> (A)   for the exclusive purpose of:
>
> > (i) providing benefits to participants and their beneficiaries; and
> > (ii) defraying reasonable expenses of administering the plan; [and]
>
> (B)   with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

104.   Under 29 U.S.C. §1104(a)(D), a fiduciary must discharge his duties in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III.

105.   Under ERISA, fiduciaries that exercise any authority or control over plan assets, including the selection of plan investments and service providers, must act prudently and solely in the interest of participants in the plan.

106.   ERISA also imposes explicit co-fiduciary liabilities on plan fiduciaries. Specifically, 29 U.S.C. §1105(a) provides a private cause of action against a fiduciary for knowingly participating in a breach by another fiduciary and knowingly failing to cure any breach of duty. The statute states, in relevant part, that:

> In addition to any liability which he may have under any other provisions of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
>
> (1)   if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; [or]

(2)   if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3)   if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

107.   Likewise, 29 U.S.C. §1132(a)(2) authorizes a plan participant to bring a civil action for appropriate relief under 29 U.S.C. §1109. Section 1109(a) provides in relevant part:

Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

## CLASS ACTION ALLEGATIONS

108.   29 U.S.C. §1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the plan under 29 U.S.C. §1109(a).

109.   In acting in this representative capacity and to enhance the due process protections of unnamed participants and beneficiaries of the Plan, as an alternative to direct individual actions on behalf of the Plan under 29 U.S.C. §1132(a)(2) and (3), Plaintiffs seek to certify this action as a class action on behalf of all Deferred Vested Participants of the Plan who receive the Lum Sum Offer Letter. Plaintiffs seek to certify, and to be appointed as representatives of, the following class:

All Retirement Eligible TV [Terminated Vested] Participants and all Non-Retirement Eligible Participants (as those terms are defined in Third Amendment to the Olympus Corporation of the Americas Pension Plan) of Olympus Corporation of the Americas Pension Plan who received the Lump Sum Offer Letter, and who elected to receive their vested accrued benefit from the Olympus

Corporation of the Americas Pension Plan in the form of a lump sum distribution.

110.    This action meets the requirements of Rule 23 and is certifiable as a class action for the following reasons:

a. The Class includes over 70 members and is so large that joinder of all its members is impracticable.

b. There are questions of law and fact common to this Class because the Defendants owed fiduciary duties to the Plan, to Plaintiffs, and to all putative Class Members and beneficiaries and took the actions and omissions alleged herein as to the Plan and not as to any individual participant. Thus, common questions of law and fact include the following, without limitation: who are the fiduciaries liable for the remedies provided by 29 U.S.C. §1109(a); whether the fiduciaries of the Plan breached their fiduciary duties to the Plan; what are the losses to the Plan resulting from each breach of fiduciary duty; and what Plan-wide equitable and other relief the court should impose in light of Defendants' breach of duty.

c. Plaintiff's claims are typical of the claims of the Class because Plaintiff was a participant during the time period at issue in this action and all participants in the Plan were harmed by Defendants' misconduct.

d. Plaintiff is an adequate representative of the Class because she was a participant in the Plan during the Class period, has no interest that is in conflict with the Class, is committed to the vigorous representation of the Class and has engaged experienced and competent attorneys to represent the Class.

e. Prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of (A) inconsistent or

varying adjudications that would establish incompatible standards of conduct for Defendants in respect to the discharge of its fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. §1109(a), and (B) adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries not parties to the adjudication or would substantially impair or impede those participants' and beneficiaries' ability to protect their interests.  Therefore, this action should be certified as a class action under Rule 23(b)(1)(A) or (B).

111.    A class action is the superior method for the fair and efficient adjudication of this controversy because joinder of all participants and beneficiaries is impracticable, the losses suffered by individual participants and beneficiaries may be small and impracticable for individual members to enforce their rights through individual actions, and the common questions of law and fact predominate over individual questions. Given the nature of the allegations, no class member has an interest in individually controlling the prosecution of this matter, and Plaintiffs are aware of no difficulties likely to be encountered in the management of this matter as a class action. Alternatively, then, this action may be certified as a class under Rule 23(b)(3) if it is not certified under Rule 23(b)(1)(A) or (B).

112.    Plaintiffs' counsel will fairly and adequately represent the interests of the Class and is best able to represent the interests of the Class under Rule 23(g).

## COUNT I

### Breach of Duties of Loyalty and Prudence—Failure to Administer the Plan in Accordance With its Terms

113.    Plaintiff restates and incorporates the allegations in the preceding paragraphs.

114.    The scope of the fiduciary duties and responsibilities of Defendants includes discharging its duties with respect to the Plan solely in the interest of, and for the exclusive purpose of providing benefits to, Plan participants and beneficiaries, defraying reasonable expenses of administering the Plan, and acting with the care, skill, prudence, and diligence required by ERISA, including administering the Plan in accordance with its terms.

115.    The Plan specifies in Section 2.2(b)(1)(D) that the applicable interest rates for determining the actuarially equivalent lump sum value of a participant's vested accrued benefit shall be the applicable segment rates in effect for the fifth month preceding the first day of the Plan Year in which occurs a participant's annuity starting date.

116.    Due to the significant and material errors in the explanation of benefits and the relative value of optional forms of benefit available under the Plan provided in the Lump Sum Offer Letter, none of the consents to distribution of the Deferred Vested Participants, nor any of the spousal consents of the spouses of such Deferred Vested Participants to waive the right to receive a survivor annuity are valid.  Therefore, the annuity starting date for all Named Plaintiffs and putative class members did not occur until after April 1, 2020. As a result, the terms of the Plan require that he actuarial equivalent values of all forms of benefit under the Plan be calculated using the interest rates applicable for November 2019.

117.    Total Plan losses will be determined after complete discovery in this case and are continuing.

118.    Defendants are personally liable under 29 U.S.C. §1109(a) to make good to the Plan any losses to the Plan resulting from the breaches of fiduciary duties alleged in this Count and is subject to other equitable or remedial relief as appropriate.

**COUNT II**

**Breach of Fiduciary Duty for Misrepresentation - Promissory Estoppel - Detrimental Reliance**

119.   Varity v. Howe, 516 U.S. 489, 506 (1996), made plain that "[f]iduciaries breach their duty of loyalty and care if they mislead plan participants or misrepresent the terms or administration of a plan."

120.   When communicating the offer to Deferred Vested Participants to receive the entire value of their retirement benefit in a lumpsum distribution, it was incumbent on Defendants to truthfully inform them of the correct value of their benefit.

121.   The duty of loyalty requires fiduciaries to deal fairly and honestly with all plan members, and it is a breach of this duty affirmatively to mislead a participant or beneficiary.

122.   The Notice of Benefit Overpayment expressly acknowledges that Lump Sum Offer Letters misrepresented the lump sum values.

123.   In reliance on the written representation of the lump sum value of their pension benefits under the Plan, Plaintiffs and other Deferred Vested Participants elected to receive the total value of their Plan benefits in the form of a single lump sum distribution.

124.   The lump sum value of Plan benefits was substantial; in many cases hundreds of thousands of dollars and represented the most significant element of their retirement savings.

125.   Plaintiffs and other members of the putative class had not yet reached normal or even early retirement age. Defendants, therefore, knew or should have known that Plaintiffs and other members of the putative class would immediately invest the amount of those distributions in order to preserve and increase that value of those assets in order to have sufficient assets to be able to retire upon reaching normal retirement age.

126.    Plaintiffs and other members of the putative class did in fact invest all or portions of their lump sum distributions in a variety of investments and incurred fees and expenses in connection with those investments.

127.    Plaintiffs and other members of the putative class invested all or portions of their lump sum distributions in investments that are illiquid or that have decreased in value since the date of acquisition and have or will incur losses by being forced to liquidate those investments in order to repay the Plan in accordance with the Plan's and Milliman's demand.

128.    None of those losses or expenses would have been incurred but for the gross negligence and misrepresentations of Defendants.

## PRAYER FOR RELIEF

For these reasons, Plaintiffs, on behalf of the Plan and all similarly situated Plan participants and beneficiaries, respectfully requests that the Court:

• Find and declare that Defendants have breached their fiduciary duties as described above;

• Find and adjudge that Defendants are liable to make good to the Plan all losses to the Plan resulting from each breach of fiduciary duties, and to otherwise restore the Plan to the position it would have occupied but for the breaches of fiduciary duty;

• Determine the method by which Plan losses under 29 U.S.C. §1109(a) should be calculated;

• Order Defendants to provide all accountings necessary to determine the amounts Defendants must make good to the Plan under §1109(a);

• Remove the fiduciaries who have breached their fiduciary duties and enjoin them from future ERISA violations;

• Surcharge against Defendants and in favor of the Plan all amounts involved in any

transactions which such accounting reveals were improper, excessive and/or in violation

of ERISA;

• Certify the Class, appoint each of the Plaintiffs as a class representative, and appoint

Grabar Law Office, Edelson Lechtzin LLP and Schneider Wallace Cottrell Konecky LLP

as Class Counsel;

• Award to the Plaintiffs and the Class their attorney's fees and costs under 29 U.S.C.

§1132(g)(1) and the common fund doctrine;

• Order the payment of interest to the extent it is allowed by law; and

• Grant other equitable or remedial relief provided under ERISA § 502(a)(3) as the Court

deems appropriate.


Dated: June 26, 2020                    By:

                                        Joshua H. Grabar (PA ID #82525)
                                        GRABAR LAW OFFICE
                                        One Liberty Place
                                        1650 Market Street, Suite 3600
                                        Philadelphia, PA 19103
                                        Telephone: (267) 507-6085
                                        Facsimile: (267) 507-6048
                                        jgrabar@grabarlaw.com

                                        Eric Lechtzin (PA ID # 62096)
                                        Marc H. Edelson (PA ID # 51834)
                                        EDELSON LECHTZIN LLP
                                        3 Terry Drive, Suite 205
                                        Newtown, PA 18940
                                        Telephone: (215) 867-2399
                                        Facsimile: (267) 685-0676
                                        elechtzin@edelson-law.com
                                        medelson@edelson-law.com

                                        John J. Nestico*
                                        SCHNEIDER WALLACE
                                        COTTRELL KONECKY LLP
                                        6000 Fairview Rd, Suite 1200

Charlotte, North Carolina 28210
Telephone: (510) 740-2946
Facsimile: (866) 505-8036
jnestico@schneiderwallace.com

*Pro Hac Vice* application forthcoming.