**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **KRISTEN LEONE, *et al.*,** : | |
| **Plaintiffs,** : | |
| : | |
| **v.** : | **Civil Action No. 20-cv-3158** |
| : | |
| **OLYMPUS CORPORATION** : | |
| **OF THE AMERICAS, *et al.*,** : | |
| **Defendants.** : | |

<u>**MEMORANDUM OPINION**</u>

Goldberg, J.                                                  September 15, 2022

Plaintiffs, former employees of the Olympus Corporation of the Americas, have sued Defendants Olympus Corporation of the Americas ("Olympus"), the Benefits Administrative Committee of Olympus, and John Does 1-10 (collectively, "Defendants") for breach of their fiduciary duties under the Employee Retirement Income Security Act, 29 U.S.C. § 1001-1461 ("ERISA"). In 2020, Plaintiffs became eligible to receive a "lump sum" benefit offered during a limited time window pursuant to the pension plan ("the Plan") offered by Defendants. Plaintiffs elected to receive the lump sum offer but were later sent notices of overpayment explaining that their distributions were accidentally miscalculated because they were based on incorrect interest rates.

Plaintiffs now bring claims on behalf of the Plan, seeking compensation from Defendants for their alleged mismanagement of Plan assets, and seek to keep the alleged overpayments under the terms of the Plan. Defendants filed a motion to dismiss the Complaint in its entirety. Because Plaintiffs' theory of recovery is based upon a simple calculation error in the lump sum values, which is not actionable under ERISA, Defendants' motion will be granted with respect to the

1

ERISA claims.  Defendants' motion will also be granted with respect to the equitable estoppel and misrepresentation claims, with the exception of the six Plaintiffs who have adequately alleged detrimental reliance.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

At this stage of the litigation, I am required to analyze Defendants' motion based upon the facts as pled in the Complaint.  When deciding a motion to dismiss for failure to state a claim, I must assume the veracity of all well-pleaded facts found in the complaint.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009).

### A.     The Plan and Lump Sum Window

The Plan sponsored by Defendants is a "defined benefit" pension plan, which is ordinarily paid in the form of an annuity rather than a lump sum.  (Compl. ¶¶ 2–3, ECF No. 1.)  In 2019, Defendants amended the Plan to permit former employees who had not yet commenced their pension to receive an immediate lump sum distribution of their Plan benefits.  This lump sum was offered during a limited window of time, and participants who wanted to receive the lump sum were required to complete and return a benefit election form by February 17, 2020.  (Lump Sum Letter, Def.'s Mot., Ex. B.)  The lump sum letter also indicated that the "commencement date" for the lump sum benefit was March 1, 2020.  (<u>Id.</u>)

The amendment to the Plan that created the lump sum window specified how to calculate the lump sum benefit by using the "segment" interest rates published by the IRS under Section 417(e)(3)(D) of the Code.  Section 2.2(b)(i)(D) of the Plan states:

> Effective March 1, 2017, the "Applicable Interest Rate" means the adjusted first, second and third segment rates applied under rules similar to the rules of Code Section 430(h)(2)(C) for the fifth calendar month preceding the first day of the Plan Year during which the Annuity Starting Date occurs, pursuant to the provisions of Code Section 417(e)(3) (including the phase-in percentages under subsection (D)(iii) thereunder).

(Compl. ¶ 28.)

Thus, to determine which interest rates to apply when calculating a lump sum benefit, Defendants would: (1) take the annuity starting date (the date the lump sum becomes payable to the participant),[1] (2) determine which Plan year the annuity date falls on, (3) count five months back from the first day of that Plan year, and (4) apply the segment interest rates in effect at that time. The Plan year runs from April 1 to March 31, and the lump sum offer letters were sent on January 2, 2020. (Compl. ¶ 18.) Therefore, the lump sum was offered during the April 1, 2019 - March 31, 2020 Plan year. Pursuant to Section 2.2(b)(i)(D) of the Plan, the lump sums were to be calculated using segment interest rates from November of 2018 – five months before the first day of the Plan year, as specified by the Plan terms ("the 2018 interest rates"). If the lump sums had been offered after March 31, 2020, the lump sums would have been calculated using the segment interest rates from November of 2019 ("the 2019 interest rates").

The lump sum offer letters included a page titled "Important Notice" which stated: "[t]he benefit amounts provided in the enclosed material are estimates and are subject to final audit at the time retirement income commences, which may result in changes to the benefit amounts." (Lump Sum Letter, Def.'s Mot., Ex. B.) The offer letter also stated: "[r]ecalculation of Benefits May Be Necessary. You may make your elections based on these estimates. If the final amounts differ by more than 10% from what is shown, we will automatically send you a revised package containing new benefit amounts for election." (Id.) As part of the paperwork the plaintiffs were required to fill out and return, plaintiffs signed a certification of their election which included the following language: "[m]y signature below certifies that Olympus Corporation of the Americas reserves the

---

[1]    See Code section 417(f)(2)(A) (defining "annuity starting date" when the benefit is not paid in the form of an annuity as "the first day on which all events have occurred which entitle the participant to such benefit.").

right to correct any errors.  If it's determined at any time that the information provided on this estimate conflicts with the benefit defined by the Olympus Corporation of the Americas Pension Plan ("Plan"), the Plan will prevail."  (Id.)

**B.    The Miscalculation and Notice of Overpayment**

The lump sum offer letters distributed by the third-party actuarial firm, Milliman, unfortunately contained a calculation error.  The lump sum amounts were accidentally calculated using the interest rates that would have applied in the next Plan Year (April 1, 2020 - March 31, 2021), rather than the year during which they were being offered (April 1, 2019 - March 31, 2020). Because the 2019 interest rates that were erroneously applied were lower than the 2018 interest rates that should have been applied, the offer letters reported higher distribution amounts than the plaintiffs were actually entitled to.  The difference was substantial, as the estimated values reported in the offer letters averaged about 33% higher than the amounts would have been if they were calculated with the 2018 interest rates.

When the error was discovered around April of 2020, Milliman sent a Notice of Benefit Overpayment to those who had elected to receive the lump sum to inform them of the error.  In the notice, plaintiffs were given the opportunity to revoke their lump sum election, or keep the corrected lower amount.  While some plaintiffs had already negotiated distribution checks before the notice was sent, others either voluntarily returned the overpayments or stop-payment orders issued by Defendants successfully prevented negotiation of the distribution checks.  Some of the plaintiffs who successfully negotiated their checks used the funds to acquire property, including illiquid assets.

### C.    Procedural Background

Plaintiffs filed this lawsuit against Defendants alleging: (1) a claim for breach of fiduciary duty for losses to the Plan under 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1109, and (2) a claim for breach of fiduciary duty, equitable estoppel, and detrimental reliance under 29 U.S.C. § 1132(a)(3). Defendants then filed the present motion to dismiss the Complaint.

## II.    LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Conclusory allegations do not suffice. Id. Twombly and Iqbal's plausibility standard requires more than a "sheer possibility that a defendant has acted unlawfully." Id. Plausibility requires "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of a claim." Phillips v. Cty. Of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

To determine the sufficiency of a complaint under Twombly and Iqbal, a court must (1) "tak[e] note of the elements a plaintiff must plead to state a claim"; (2) identify the allegations that are not entitled to the assumption of truth because they are no more than conclusions; and (3) "where there are well-pleaded factual allegations, . . . assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Burtch v. Millberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011). Courts must construe the allegations in a complaint "in the light most favorable to the plaintiff." Id. at 220. When deciding a motion to dismiss, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and

matters of public record." Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (quoting Pension

Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

## III.   DISCUSSION

Defendants move to dismiss Plaintiffs' ERISA claims because they contend: (1) the claims

fail as a matter of law; and (2) Plaintiffs do not have standing to bring suit on behalf of the Plan.

Defendants also move to dismiss Plaintiffs' equitable estoppel and misrepresentation claims,

arguing that they have not adequately alleged extraordinary circumstances or detrimental reliance

as required.

### A.  Plaintiffs' ERISA Claims for Breach of Fiduciary Duty Fail as a Matter of Law

Plaintiffs argue that they are entitled to the alleged overpayments because the

miscalculation and subsequent notice of overpayment extended the lump sum window past the

April 1 annuity starting date such that the 2019 interest rates are now required to be applied under

the terms of the Plan.  Plaintiffs maintain that Defendants' refusal to apply the 2019 interest rates

to the lump sum calculations is a breach of their fiduciary duty to administer the Plan in accordance

with its terms.  Defendants disagree because Plaintiffs' theory is based on a miscalculation in

benefits, which is not actionable under ERISA.

"ERISA is a 'comprehensive' statute that is 'the product of a decade of congressional study

of the Nation's private employee benefit system.'"  Santomenno ex rel. John Hancock Tr. v. John

Hancock Life Ins. Co. (U.S.A), 768 F.3d 284, 291–92 (3d Cir. 2014) (quoting Mertens v. Hewitt

Assocs., 508 U.S. 248, 251 (1993)).  "ERISA imposes fiduciary responsibilities on certain persons.

ERISA fiduciaries must act solely in the interest of the plan participants and beneficiaries." Id.

(citing 29 U.S.C. § 1104(a)(1)(A)(ii)).  To state a claim for breach of fiduciary duty under ERISA,

the plaintiff must establish the following elements: "(1) a plan fiduciary (2) breaches an ERISA-

imposed duty (3) causing a loss to the plan." <u>Leckey v. Stefano</u>, 501 F.3d 212, 225–26 (3d Cir. 2007).

Plaintiffs bring claims under 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1109 for losses to the Plan.  Section 1132(a)(2) empowers participants to bring suit on behalf of a plan under § 1109, which states:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach.

29 U.S.C. § 1109(a).

An honest mistake by an administrator of an ERISA plan does not give rise to liability. <u>Conkright v. Frommert</u>, 559 U.S. 506, 509 (2010).  As the United States Supreme Court has explained, "an ERISA plan administrator with discretionary authority to interpret a plan is entitled to deference in exercising that discretion." <u>Id.</u>  Accordingly, courts have rejected the "one-strike-and-you're-out" approach to potential breaches of fiduciary duty in the ERISA context. <u>Frommert</u>, 559 U.S. at 513; <u>Burke v. Latrobe Steel Co.</u>, 775 F.2d 88, 92 (3d Cir. 1985).  The United States Court of Appeals for the Third Circuit requires a showing of willful or bad faith conduct to establish liability. <u>Burke</u>, 775 F.2d at 92.  If actions are "undertaken pursuant to a good faith, albeit erroneous interpretation, ERISA's fiduciary provisions are not violated." <u>Id.</u>

With that deferential standard in mind, Defendants cannot be held liable for their accidental miscalculation in benefits and, thus, Plaintiffs have not sufficiently pled a claim for breach of fiduciary duty.  Plaintiffs attempt to distract from this core principle by advancing arguments based on technicalities, but the crux of their argument remains untenable.  The law does not provide for a remedy where no breach has occurred.  And Milliman's miscalculation does not constitute a breach of fiduciary duty absent a showing of willful or bad faith conduct. <u>See Morris v. Aetna</u>

Life Ins. Co., No. 820-cv-00821SBGJSX, 2021 WL 3509553, at *3 (C.D. Cal. Aug. 9, 2021) (no breach of fiduciary duty where third-party administrator miscalculated benefits and then sought to recoup overpayments because "the calculation of benefits. . . is a ministerial function that does not have a fiduciary duty attached to it."). As Defendants noted in their brief, the Complaint is devoid of any allegations that Defendants were unreasonable in relying on Milliman to calculate the lump sum benefits. And there are no facts alleged in the Complaint suggesting the miscalculation involved bad faith of any kind. It was simply a mistake, and that is not actionable under ERISA.

Even if an accidental miscalculation in benefits could give rise to liability, Plaintiffs still would not be entitled to recovery because IRS guidance requires corrective distributions to be calculated using the interest rates in effect on the original distribution date. Plaintiffs maintain that when Defendants sent the notice of overpayment, they "extended the [lump sum] window beyond the April 1, 2020 start of the new Plan year, [and therefore] the Plan document itself requires that lump sum distributions be calculated using the interest rates effective November 2019 and which were originally used by [Defendants] to communicate the lump sum window." (Pltf.'s Br. p. 10–11). But Plaintiffs cite no decisional authority to support this proposition.[2] Instead, Plaintiffs point to Section 417(f)(2)(A)(ii) of the IRS Code, which states that an annuity starting date (in the case of a lump sum) is not triggered until "the first day on which all events have occurred which entitle the participant to such benefit." Id. One of those requirements is that a participant obtain their spouses' consent before electing to waive their annuity form of benefit. Code §

---

[2]      Plaintiffs allege that Clevenger v. Dillards Dep't Stores, Inc., No. 02-cv-558, 2007 WL 4248207 (S.D. Ohio Nov. 30, 2007) supports their argument that the annuity starting date did not occur until after April 1. This case is distinguishable. The Clevenger court was concerned with the calculation of lump sum benefits for a Plan that was terminated. Id. at * 5. The court determined that the date of distribution, rather than the annuity starting date, governed the calculation of the termination payments. Id. In so holding, the court cited 29 C.F.R. § 4041.28, which dictates "closeouts" of ERISA plans. Id. Here, the Plan was not terminated and, thus, Plaintiffs' reliance on Clevenger is misplaced.

417(f)(2)(A)(ii).  Thus, Plaintiffs argue that because their spouses' consent obtained before March 31 was sought for an incorrect amount, it is somehow void and therefore the annuity starting date did not occur prior to the end of the Plan year on March 31.

This argument is flawed for several reasons.  First, the IRS provides specific guidance for situations in which benefit amounts are miscalculated due to an error.  IRS guidance states that in the case of a defined benefit plan, a corrective distribution should be calculated "in accordance with the plan's provisions for actuarial equivalence . . . or any other applicable provisions[] that were in effect *on the date that the distribution should have been made.*" IRS Rev. Proc. 2019-19 § 6.02(4)(d) (emphasis added).  The Plan terms also specified in multiple places that the lump sum benefits were to be calculated and paid in accordance with a March 1, 2020 commencement date. (See Def.'s Mot., Ex. A, Plan Appendix B, Sections A3(a), (f) and A4(a), (g)).  Additionally, if the spouses' consents were somehow invalidated by the miscalculation, the plaintiffs would not be entitled to lump sum amounts calculated with the 2019 interest rates, they would simply not be entitled to a lump sum amount at all.  Plaintiffs cite no case law in which a spouses' consent to waive an annuity benefit was invalidated due to a calculation error in the lump sum amount.  In sum, Plaintiffs present no coherent argument as to why the corrective lump sum amounts should have been calculated using the 2019 interest rates, and the case law and applicable IRS guidance suggest that the opposite is true.

Lastly, it is important to note that there was an explicit notice in the lump sum offer letters that stated the benefit amounts were estimates subject to potential recalculation, and the plaintiffs signed a form that reserved Defendants' right to correct any errors.  The notice also set forth a specific procedure to be followed in the event that a recalculation was necessary.  Specifically, it stated that "[i]f the final amounts differ by more than 10% from what is shown, we will

automatically send you a revised package containing new benefit amounts for election." (Lump Sum Letter, Def.'s Mot., Ex. B.)  And that is exactly what Defendants did.  When the error was discovered, Defendants sent the plaintiffs a notice of overpayment with a revised package containing new benefit amounts.  Thus, Defendants followed the exact procedure as set forth in the lump sum offer letters that reserved their right to correct any errors in the event of a miscalculation.

For the foregoing reasons, Plaintiffs' ERISA claims for breach of fiduciary duty fail as a matter of law.

### B.  Plaintiffs Do Not Have Standing to Sue on Behalf of the Plan

Even if Plaintiffs' ERISA claims do not fail on the merits, there is no Article III standing to bring suit on behalf of the Plan.

Federal Rule of Civil Procedure 12(b)(1) allows a party to move for dismissal of any claim for which the district court lacks subject matter jurisdiction.  Article III limits federal judicial jurisdiction to cases and controversies.  U.S. Const. art. III, § 2; see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  Requiring that a plaintiff has standing ensures that they "allege such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction." Summers, 555 U.S. at 493 (emphasis in original).  To satisfy this burden, a plaintiff must show: (1) "that he is under a threat of suffering an injury in fact that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical"; (2) "a causal connection between the injury and the conduct complained of"; and (3) "a likelihood that a favorable judicial decision will prevent or redress the injury." ZF Meritor, LLC v. Eaton Corp., 696 F.3d 254, 301 (3d Cir. 2012) (citing Summers, 555 U.S. at 493).

Defendants argue that Plaintiffs lack standing to bring a claim under § 1109 for losses to the Plan because the benefits in a defined benefit plan are fixed and do not fluctuate based on how well or poorly the plan is managed.  Therefore, Defendants posit that Plaintiffs do not have Article III standing because any alleged diminution in Plan assets would have no impact on their benefits. Without the alleged breach having any impact on their benefits, Defendants maintain that Plaintiffs have no "concrete stake" in the lawsuit.  Defendants cite Thole v. U. S. Bank N.A, 140 S. Ct. 1615 (2020) to support this standing argument.  In Thole, plaintiffs were participants in a defined benefit plan – the same type of plan at issue here.  Id. at 1618.  Plaintiffs alleged that defendant administrators of the plan made poor investment decisions and brought claims for $ 750 million in losses to the plan. Id.  Defendants moved to dismiss the complaint based on lack of standing.  The United States Supreme Court held that plaintiffs lacked Article III standing because as members of a defined benefit plan, "they would still receive the exact same monthly benefits that they are already slated to receive" no matter whether they won or lost the lawsuit.  Id. at 1619.  Thus, the Court affirmed dismissal of the action due to lack of standing.  Id.

Plaintiffs attempt to distinguish Thole by arguing that the breach here is not mismanagement of plan assets, but rather "the failure to comply with the terms of the Plan Document."  (Pltf.'s Br. p. 17).  This alleged "failure to comply with the terms of the Plan" is simply Defendants' refusal to allow Plaintiffs to keep the overpayments.  But as explained above, the plaintiffs are not entitled to keep the overpayments because no fiduciary duty was breached when Milliman misquoted the lump sum amounts due to a miscalculation.  Thus, Plaintiffs cannot defeat the holding in Thole by circling back to their defective argument that the miscalculation resulted in a breach.[3]

---

[3]     Plaintiffs have not asserted a claim under 29 U.S.C. § 1132(a)(1)(B) to clarify their rights to future benefits, despite having the opportunity to amend their Complaint.  They have only asserted a claim under

For the reasons outlined above, Plaintiffs do not have Article III standing to bring a claim on behalf of the Plan, and their ERISA claims under § 1132(a)(2) and § 1109 are dismissed.[4]

### C.  Plaintiffs Have Not Sufficiently Pled Claims for Equitable Estoppel

Plaintiffs next bring claims for breach of fiduciary duty for misrepresentation/promissory estoppel/detrimental reliance.  Plaintiffs assert that they relied on the written representation of the lump sum value in the offer letter when they elected to receive the lump sum, and invested all or portions of their distributions in investments that are either illiquid or have since decreased in value.  Plaintiffs contend that Defendants' conduct in making this misrepresentation, which they characterize as "grossly negligent," constituted a breach of fiduciary duty.

To state a cause of action for equitable estoppel, "an 'ERISA plaintiff must establish (1) a material representation, (2) reasonable and detrimental reliance upon the representation, and (3) extraordinary circumstances.'" Burstein v. Ret. Acct. Plan For Emps. of Allegheny Health Educ. & Rsch. Found., 334 F.3d 365, 383 (3d Cir. 2003) (quoting Curcio v. John Hancock Mut. Life Ins. Co., 33 F.3d 226, 235 (3d Cir.1994)).  "'[E]xtraordinary circumstances generally involve acts of bad faith on the part of the employer, attempts to actively conceal a significant change in the plan,

---

§ 1109 for losses *to the Plan*.  Regardless, as explained in Section III.A *infra*, a claim under § 1132(a)(1)(B) would fail as a matter of law even if it were properly pled.

[4]      In an attempt to bolster their standing argument, Plaintiffs filed a notice of supplemental authority in which they cited the recent Third Circuit decision in Boley v. Universal Health Servs., Inc., 36 F.4th 124, 2022 WL 1768984 (3d Cir. June 1, 2022) (ECF No. 25).  In Boley, the Third Circuit held that participants in a *defined contribution plan* had standing to bring a claim against plan fiduciaries to challenge excessive recordkeeping and administrative costs as well as poor investment decisions that allegedly caused losses to the plan.  Id. at 128 (emphasis added).  The Boley court found that the plaintiffs had suffered a concrete injury flowing from the breach because they had each invested in at least one of the funds that had allegedly excessive fees.  Id. at 131.  Therefore, the alleged breach had a direct effect on each plaintiff by reducing the amount of their benefits.  Id.  Here, as in Thole, the Plan is a defined benefit plan, and the Plan's assets have no effect on the benefits plaintiffs are entitled to.  Accordingly, Boley does not change the standing analysis here.

or commission of fraud." Id. (quoting Jordan v. Federal Express Corp., 116 F.3d 1005, 1011 (3d Cir. 1997)).

Plaintiffs argue that they have sufficiently pled an equitable estoppel claim because the Complaint alleges: (1) the incorrect lump sum values in the offer letters were material misrepresentations, (2) the plaintiffs detrimentally relied upon these misrepresentations in making financial decisions including investing in illiquid assets, and (3) Defendants knew that the value of the plaintiffs' benefits would increase after the April 1, 2020 date, but concealed that fact when they made their original offer in order to save themselves "millions of dollars in future funding obligations."  (Pltf.'s Br. p. 6).  This alleged concealment is what Plaintiffs point to as the "extraordinary circumstances" for their equitable estoppel claim.

Defendants respond that Plaintiffs have failed to plead that they acted in bad faith or committed intentional fraud when they sent out the offer letters with the incorrect lump sum values. Rather, Plaintiffs only allege that a one-time miscalculation in the lump sum amounts was mistakenly conveyed in a single offer letter sent to each plaintiff, and that error was swiftly corrected upon its discovery.   Defendants also maintain that because the Plan did not provide for the payment of lump sums after March of 2020, they were not required to disclose what the value of the benefit would be if the plaintiffs did not elect to receive the lump sum at that time. Defendants also note that the allegations in the Complaint do not amount to a "vast network of misrepresentations. . . over an extended course of dealing" as several cases within this Circuit have held to be sufficient to establish extraordinary circumstances for an equitable estoppel claim.  See, e.g., Flick v. Chartwell Advisory Grp. Ltd., No. 14-cv-06953, 2015 WL 4041969, at *6 (E.D. Pa. July 2, 2015) (extraordinary circumstances not pled where plaintiff was told repeatedly that the company would make matching contributions to his 401(k) because plaintiff failed to plead that

he was diligent and engaged in consistent questioning about the benefits at stake); <u>Kurz v. Philadelphia Elec. Co.</u>, 96 F.3d 1544, 1553 (3d Cir. 1996) (noting the "heightened requirement" for equitable estoppel claims in the ERISA context and that "we have consistently rejected estoppel claims based on simple ERISA reporting errors or disclosure violations."). Defendants conclude that Plaintiffs' allegations regarding the simple calculation error, without more, do not constitute "extraordinary circumstances" sufficient to survive a motion to dismiss an equitable estoppel claim.

I agree with Defendants that Plaintiffs have not sufficiently pled facts demonstrating bad faith, attempts to actively conceal, or the commission of fraud in connection with the miscalculation conveyed in the lump sum offer letters. Defendants were not required to inform the plaintiffs that the value of their benefits would increase after March of 2020 because, as Defendants noted, the lump sums were not being offered after March of 2020. Although Plaintiffs baldly assert that Defendants acted "grossly negligent in communicating incorrect lump sum values," they provide no facts to support that contention. It is Plaintiffs' burden to allege extraordinary circumstances by pleading "acts of bad faith on the part of the employer, attempts to actively conceal a significant change in the plan, or commission of fraud," and they have failed to do so. <u>Burstein</u>, 334 F.3d at 383. Accordingly, Plaintiffs' equitable estoppel claims must be dismissed. [5]

---

[5]   In their brief, Plaintiffs also seem to add claims for fiduciary breach based on omission and/or failure to monitor. With respect to the failure to monitor claim, it is insufficient to rely on allegations of a single calculation error made by a third-party to plausibly allege a failure to monitor claim, as Defendants were permitted to rely on Milliman to perform ministerial functions for the Plan if they were prudent in selecting them to perform such services. <u>Wilson v. Bank of Am. Pension Plan for Legacy Companies</u>, No. 18-cv-07755-TSH, 2019 WL 2549044, at * 3 (N.D. Cal. June 20, 2019). With respect to the claim for fiduciary breach based on omission, as explained above, Defendants were not required to inform Plaintiffs about the potential value of their benefits payable at a time not available under the terms of the lump sum offer.

### D. All But Six Plaintiffs Have Failed to Plead Detrimental Reliance in Support of Their Misrepresentation Claims

Plaintiffs lastly bring a claim for breach of fiduciary duty based on misrepresentation.  In order to plead a claim for breach of fiduciary duty based on misrepresentation, "a plaintiff must demonstrate that: (1) the defendant was acting in a fiduciary capacity; (2) the defendant made affirmative misrepresentations or failed to adequately inform plan participants and beneficiaries; (3) the misrepresentation or inadequate disclosure was material; and (4) the plaintiff detrimentally relied on the misrepresentation or inadequate disclosure." In re Unisys Corp. Retiree Med. Benefits ERISA Litig., 579 F.3d 220, 228 (3d Cir. 2009) (internal quotations omitted).   "In demonstrating sufficient reliance, the plaintiff must have taken some action as a result of the misrepresentation; the mere expectation of a continued benefit is not enough."  Shook v. Avaya Inc., 625 F.3d 69, 73 (3d Cir. 2010).

Defendants concede that six out of the thirty-nine plaintiffs have "arguably" pled detrimental reliance.[6]   However, the remaining plaintiffs simply allege that if they had not been presented with the miscalculated lump sum amount, they "would have considered a different financial path." (Compl. ¶ 78.)  It is insufficient to "allege[] only the mere expectation that benefits would materialize[] without alleging reliance on that expectation." Burstein, 334 F.3d at 386 (internal quotations omitted).  The same is true for Plaintiffs' allegations that they were denied the opportunity to dispute their overpayments.  (Compl. ¶ 46.)  Despite the fact that the Plan has a claims and appeal procedure that Plaintiffs could have utilized if they wanted to challenge their benefit amounts (See Plan Section 7.6.), this alleged harm was not caused by reliance on the

---

[6]      Those six Plaintiffs are: "(1) Ms. Meszaros who claims she used her lump sum to close a real estate transaction (Compl. ¶ 43); (2) Ms. Cajuste and Ms. Duborg who claim they were charged a returned check fee (Id. ¶¶ 44-45); (3) Mr. Martinez and Mr. Reed who claim they used the lump sum for down payment on homes (Id. ¶¶ 68, 72); and (4) Ms. Clark who claims she used the funds to pay off debts and now lacks the financial ability to remit the funds (Id. ¶ 71)." (Def.'s Br. p. 17–18).

misstatement of benefits as a claim for detrimental reliance requires.  Instead, the harm of not being able to keep the overpayments falls squarely into the "expectancy interest" category of harm that was expressly rejected in <u>Burstein</u>.

Plaintiffs will be provided leave to amend their Complaint to plead more specific allegations of the reliance losses suffered by the remaining thirty-three plaintiffs.  <u>See</u> <u>Burstein</u>, 334 F.3d at 389 (permitting plaintiff leave to amend so that he may plead detrimental reliance upon counsel's representation that he had the ability to show harm).

An appropriate Order follows.